District/Off: 0971−4          User: lblue          Date Created: 10/10/2014
Case: 14−44083          Form ID: B9I          Total: 18

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | |
|---|---|---|---|
| db | Sarah−jane Parker | 990 28th Street | Oakland, CA 94608 |
| ust | Office of the U.S. Trustee/Oak | Office of the U.S. Trustee | 1301 Clay St. #690N | Oakland, CA 94612 |
| tr | Martha G. Bronitsky | P.O. Box 9077 | Pleasanton, CA 94566 |
| cr | Vida Capital Group, LLC | c/o Scheer Law Group | 155 N. Redwood Drive | Suite 100 | San Rafael, CA 94903 |
| aty | Joshua Scheer | Scheer Law Group | 155 N Redwood Dr. #100 | San Rafael, CA 94903 |
| aty | Marlene Fong | Fong &Fong PC | 2161 Harbor Bay Parkway | Alameda, CA 94502 |
| smg | Labor Commissioner | 1515 Clay St. | Room 801 | Oakland, CA 94612 |
| smg | State Board of Equalization | Collection Dept. | P.O. Box 942879 | Sacramento, CA 94279 |
| smg | CA Employment Development Dept. | Bankruptcy Group MIC 92E | P.O. Box 826880 | Sacramento, CA 94280−0001 |
| smg | CA Franchise Tax Board | Special Procedures Bankruptcy Unit | P.O. Box 2952 | Sacramento, CA 95812−2952 |
| 13850489 | Amex | American Express | PO Box 3001 | 16 General Warren Blvd | Malvern, PA 19355 |
| 13850490 | Bayside Court Owners Association | PO Box 81 | Willits, CA 95490 |
| 13850491 | Chase | PO Box 15298 | Wilmington, DE 19850 |
| 13850492 | Donald R. White | Alameda County Tax Collector | 1221 Oak Street | Oakland, CA 94612 |
| 13850493 | John Cruz | 990 28th Street | Emeryville, CA 94608 |
| 13850494 | Natwest Mortgage/First Direct | 40 Wakefield Road | Leeds LS98 1FD | United Kingdom |
| 13850495 | Ocwen Loan Servicing | City National Bank/Ocwen Loan Svcng | Attn: Bankruptcy Dept | PO Box 24738 | West Palm Beach, FL 33416 |
| 13850496 | Vida Capital | c/o Axis Foreclosure Services | 2911 Aberdeen Lane | El Dorado Hills, CA 95762 |

TOTAL: 18

EXHIBIT A

First American Title Guaranty Company hereby certifies that the within instrument is a true and correct copy of the original instrument recorded in the office of the recorder of the County of ___Alameda___, State of California,

on ___July 10, 2000___

Recorder's Serial No. ___2000-203590___

FIRST AMERICAN TITLE GUARANTY COMPANY

By _Susan Davidson_

WHEN RECORDED RETURN TO:

John K. Sutherland
2033 North Main Street
Suite 700
Walnut Creek, California  94596


DECLARATION OF COVENANTS,

CONDITIONS AND RESTRICTIONS

OF

BAYSIDE COURT,

OAKLAND,  CALIFORNIA


READ & APPROVED

_____
SIGNATURE          DATE

_____
SIGNATURE          DATE

TABLE OF CONTENTS
OF
DECLARATION OF COVENANTS,
CONDITIONS AND RESTRICTIONS
OF

BAYSIDE COURT

OAKLAND, CALIFORNIA

| ARTICLES | | | PAGES |
|---|---|---|---|
| I. | RECITALS | | 1.1 |
| | 1.1 | Facts | 1.1 |
| | 1.2 | Applicability of Restrictions | 1.1 |
| II. | DEFINITIONS | | 2.1 |
| | 2.1 | Articles | 2.1 |
| | 2.2 | Association | 2.1 |
| | 2.3 | Balcony | 2.1 |
| | 2.4 | Board | 2.1 |
| | 2.5 | Bond | 2.1 |
| | 2.6 | Bylaws | 2.1 |
| | 2.7 | Common Area | 2.1 |
| | 2.8 | Condominium | 2.1 |
| | 2.9 | Declarant | 2.1 |
| | 2.10 | Declaration | 2.2 |
| | 2.11 | Eligible Holder | 2.2 |
| | 2.12 | Exclusive Use Common Area | 2.2 |
| | 2.13 | First Mortgage | 2.2 |
| | 2.14 | First Mortgagee | 2.2 |
| | 2.15 | Garden Patio | 2.2 |
| | 2.16 | Institutional Mortgagee | 2.2 |
| | 2.17 | Map | 2.2 |
| | 2.18 | Member | 2.2 |
| | 2.19 | Mortgage | 2.2 |
| | 2.20 | Mortgagee | 2.3 |
| | 2.21 | Owner | 2.3 |
| | 2.22 | Parking Space | 2.3 |
| | 2.23 | Plan | 2.3 |
| | 2.24 | Project | 2.3 |
| | 2.25 | Project Documents | 2.3 |
| | 2.26 | Roof Deck | 2.3 |
| | 2.27 | Unit | 2.3 |
| III. | OWNERSHIP AND EASEMENTS | | 3.1 |
| | 3.1 | Non-Severability | 3.1 |
| | 3.2 | Ownership of Units | 3.1 |
| | 3.3 | Ownership of Common Area | 3.1 |
| | 3.4 | Easements | 3.1 |
| | 3.5 | Owners' Rights and Duties | 3.3 |
| | 3.6 | Association's Duties | 3.4 |
| | 3.7 | Judicial Partition | 3.4 |
| | 3.8 | Development Rights | 3.5 |

|       | 3.9  | Combination of Units                    | 3.6  |
|-------|------|-----------------------------------------|------|
| IV.   |      | USE RESTRICTIONS                        | 4.1  |
|       | 4.1  | Use of Common Area Generally            | 4.1  |
|       | 4.2  | Garbage                                 | 4.1  |
|       | 4.3  | Invitees                                | 4.1  |
|       | 4.4  | Use of Units                            | 4.1  |
|       | 4.5  | Rental or Leasing of Units              | 4.1  |
|       | 4.6  | Animals                                 | 4.2  |
|       | 4.7  | Parking                                 | 4.3  |
|       | 4.8  | Signs                                   | 4.3  |
|       | 4.9  | Solar Collectors, Etc.                  | 4.3  |
|       |      |                                         | 4.3  |
| V.    |      | IMPROVEMENTS                            | 5.1  |
|       | 5.1  | Maintenance of Common Area              | 5.1  |
|       | 5.2  | Alterations to Common Area              | 5.2  |
|       | 5.3  | Maintenance of Units                    | 5.2  |
|       | 5.4  | Association's Right To Maintain Units   | 5.2  |
|       | 5.5  | Alterations to Units                    | 5.3  |
|       | 5.6  | Exclusive Use Common Area               | 5.3  |
|       | 5.7  | Landscaping                             | 5.3  |
|       | 5.8  | Right of Entry                          | 5.3  |
|       | 5.9  | Damage and Destruction                  | 5.3  |
|       | 5.10 | Condemnation                            | 5.5  |
|       | 5.11 | Mechanics' Liens                        | 5.5  |
| VI.   |      | FUNDS AND ASSESSMENTS                   | 6.1  |
|       | 6.1  | Covenants to Pay                        | 6.1  |
|       | 6.2  | Regular Assessments                     | 6.1  |
|       | 6.3  | Special Assessments                     | 6.5  |
|       | 6.4  | Reimbursement Assessments               | 6.5  |
|       | 6.5  | Accounts                                | 6.5  |
|       | 6.6  | Enforcement of Assessments              | 6.7  |
|       | 6.7  | Statement of Assessment Lien            | 6.9  |
|       | 6.8  | Subordination of Lien                   | 6.9  |
|       | 6.9  | Financial Statements; Books and Records | 6.9  |
|       | 6.10 | Enforcement of Bonded Obligations       | 6.14 |
| VII.  |      | THE ASSOCIATION                         | 7.1  |
|       | 7.1  | The Organization                        | 7.1  |
|       | 7.2  | Membership                              | 7.1  |
|       | 7.3  | Classes of Membership                   | 7.1  |
|       | 7.4  | Voting                                  | 7.1  |
| VIII. |      | RIGHTS OF MORTGAGEES                    | 8.1  |
|       | 8.1  | Conflict                                | 8.1  |
|       | 8.2  | Liability for Unpaid Assessments        | 8.1  |
|       | 8.3  | Reserve Fund                            | 8.1  |
|       | 8.4  | Termination of Contracts and Agreements | 8.1  |
|       | 8.5  | Notices of Eligible Holders             | 8.2  |
|       | 8.6  | Inspection of Books and Records         | 8.2  |
|       | 8.7  | Financial Statements                    | 8.2  |
|       | 8.8  | Termination of Project                  | 8.2  |
|       | 8.9  | Actions Requiring Consent               | 8.3  |

|  |  |  |  |
|---|---|---|---|
|  | 8.10 | Partial Condemnation or Destruction | 8.3 |
|  | 8.11 | Self-Management | 8.3 |
|  | 8.12 | Mortgage Protection | 8.4 |
| IX. |  | AMENDMENT AND ENFORCEMENT | 9.1 |
|  | 9.1 | Amendments | 9.1 |
|  | 9.2 | Enforcement and Non-Waiver | 9.2 |
| X. |  | MISCELLANEOUS PROVISIONS | 10.1 |
|  | 10.1 | Term of Declaration | 10.1 |
|  | 10.2 | Construction of Provisions | 10.1 |
|  | 10.3 | Binding | 10.1 |
|  | 10.4 | Severability of Provisions | 10.1 |
|  | 10.5 | Gender, Number and Captions | 10.1 |
|  | 10.6 | Redistribution of Project Documents | 10.1 |
|  | 10.7 | Exhibits | 10.1 |
|  | 10.8 | Conflict | 10.1 |

# DECLARATION OF COVENANTS,
## CONDITIONS AND RESTRICTIONS
### OF
### BAYSIDE COURT,
### OAKLAND, CALIFORNIA

THIS DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS is made this 22 day of May, 2000, Golden State Linen Service, Inc.

## ARTICLE I

### RECITALS:

1.1   FACTS:   This Declaration is made with reference to the following facts:

1.1.1   Property Owned by Declarant:   Declarant is the owner of the real property located in Oakland, California, described as follows:

All of the real property shown on Parcel 6640 recorded on November 19 1997, in Book __232__ of __Parcel__ Maps, at Page __81__, and on Parcel Map 7477 recorded on __May 30__, 2000, in Book __252__ of __Parcel__ Maps, at Page __6__, in the Official Records of Alameda County, California.

1.1.2   Nature of Project:   Declarant intends to develop the Project as a condominium project within the meaning of California Civil Code Section 1351(f) and in conformity with the provisions of the Davis-Sterling Common Interest Development Act. To establish the condominium project, Declarant desires to impose on the Project mutually beneficial restrictions, easements, assessments and liens under a general plan of improvement and development for the benefit of all of the Owners, Units and Common Area within the Project.

1.2   APPLICABILITY OF RESTRICTIONS:   Pursuant to California Civil Code Section 1353, Declarant hereby declares that the Project and all improvements thereon are subject to the provisions of this Declaration.   The Project shall be held, conveyed, hypothecated, encumbered, leased, rented, used, occupied and improved subject to the mutually beneficial covenants, conditions and restrictions stated in this Declaration.   All such covenants, conditions and restrictions are declared to be in furtherance of the plan for the subdivision, improvement and sale of the Project as a condominium project.   Pursuant to California Civil Code Section 1354, all of the limitations, easements, uses, obligations, covenants, restrictions and conditions stated in this Declaration shall be enforceable as equitable servitudes, shall run with the Project and shall inure to the benefit of and be binding on all Owners and all other parties having or acquiring any right, title or interest in

1.1

any part of the Project.

1.2                              linen\ccr10516.gsl

# ARTICLE II

## DEFINITIONS

Unless the context clearly indicates a different meaning, the terms used in this Declaration, in the Map, in the Plan, and in any deed to a Condominium in the Project shall have the meanings specified in this Article II.

2.1. ARTICLES: The term "Articles" shall mean the articles of incorporation of the Association which have been or shall be filed with the California Secretary of State.

2.2. ASSOCIATION: The term "Association" shall mean the BAYSIDE COURT OWNERS ASSOCIATION, its successors and assigns, a nonprofit membership corporation.

2.3. BALCONY: The term "Balcony" shall mean each portion of the Common Area identified on the Plan as "Balcony." The boundaries and dimensions of each Balcony are shown on the Plan.

2.4. BOARD: The term "Board" shall mean the board of directors of the Association.

2.5. BOND: The term "Bond" shall mean a surety or performance bond or other arrangement to secure Declarant's obligation to complete improvements or Declarant's other obligations in, on, or for the Project.

2.6. BYLAWS: The term "Bylaws" shall mean the bylaws of the Association and any amendments thereto.

2.7. COMMON AREA: The term "Common Area" shall mean all of the Project which is not expressly made a part of any Unit.

2.8. CONDOMINIUM: The term "Condominium" shall mean an estate in real property consisting of a Unit together with the undivided interest in the Common Area conveyed in fee to an Owner, and all easements appurtenant thereto.

2.9. DECLARANT: The term "Declarant" shall mean Golden State Linen Service, Inc. The term "Declarant" shall also mean successors in interest of Declarant, if (i) such successor(s) in interest acquire all or any portion of Declarant's interest in the Project for the purpose of development or sale, and (ii) Declarant has expressly transferred or assigned to such successor(s) its rights and duties as Declarant to all or any portion of the Project. For any successor in interest of Declarant to be deemed a Declarant under this Declaration, Declarant shall record in the Official Records of Alameda County, California, a certificate designating the successor in interest as a Declarant. There may be more than one (1) Declarant.

2.1

Case: 14-44083   Doc# 72-1   Filed: 11/03/15   Entered: 11/03/15 19:19:30   Page 8 of 34

2.10.  DECLARATION:  The term "Declaration" shall mean this Declaration of Covenants, Conditions and Restrictions and any amendments hereto.

2.11.  ELIGIBLE HOLDER:  The term "Eligible Holder" shall mean any Institutional Mortgagee which has delivered a written notice to the Association containing its name, address and the number or address of the Condominium encumbered by the First Mortgage held by the Eligible Holder and requesting that the Association deliver written notice to it of any or all of the events specified in Section 8.5, below.

2.12.  EXCLUSIVE USE COMMON AREA:  The term "Exclusive Use Common Area" shall mean those portions of the Common Area which are shown on the Plan and/or defined in this Declaration as the Balconies, the Garden Patios, the Parking Spaces, and the Roof Deck.  The term "Exclusive Use Common Area" shall also mean those portions of the Common Area assigned by the Association to and for the exclusive use of a particular Owner.

2.13.  FIRST MORTGAGE:  The term "First Mortgage" shall mean a Mortgage which has priority under the recording statutes of the State of California over all other Mortgages encumbering a specific Condominium.

2.14.  FIRST MORTGAGEE:  The term "First Mortgagee" shall mean the Mortgagee of a First Mortgage.

2.15.  GARDEN PATIO:  The term "Garden Patio" shall mean each of the fenced areas adjacent to and accessible through Units 1, 2, 3, 4, 5, and 2825B Myrtle Street.

2.16.  INSTITUTIONAL MORTGAGEE:  The term "Institutional Mortgagee" shall mean a First Mortgagee which is (i) a bank, savings and loan association, insurance or mortgage company or other entity or institution chartered under or regulated by any federal and/or state law: (ii) an insurer or governmental guarantor of a First Mortgage including without limitation the Federal Housing Authority and the Veteran's Administration; or (iii) the State of California.

2.17.  MAP:  The term "Map" shall mean Parcel Map 6640 recorded on November 19, 1997, in Book 232 of Maps at Page 81, and Parcel Map 7477 recorded on May 30, 2000, in Book 252 of Parcel Maps, at Page 6, in the Official Records of Alameda County, California.

2.18.  MEMBER:  The term "Member" shall mean an Owner.

2.19.  MORTGAGE:  The term "Mortgage" shall mean any duly recorded mortgage or deed of trust encumbering a Condominium.

Case: 14-44083   Doc# 72-1   Filed: 11/03/15   Entered: 11/03/15 19:19:30   Page 9 of 34

2.20. <u>MORTGAGEE</u>: The term "Mortgagee" shall mean a mortgagee under any duly recorded mortgage or a beneficiary under a deed of trust, either of which encumbers a Condominium.

2.21. <u>OWNER</u>: The term "Owner" shall mean the holder of record fee title to a Condominium, including Declarant as to each Condominium owned by Declarant. If more than one (1) person owns a single Condominium, the term "Owner" shall mean all owners of that Condominium. The term "Owner" shall also mean a contract purchaser (vendee) under an installment land contract but shall exclude any person having an interest in a Condominium merely as security for performance of an obligation. Every Unit Owner shall be a Member of the Association.

2.22. <u>PARKING SPACE</u>: The term "Parking Space" shall mean those portions of the Common Area shown on the Plan as individually lettered and numbered areas designated "F" or "M" or as "parking exclusive to #990 28th Street." The dimensions of each Parking Space are shown on the Plan.

2.23. <u>PLAN</u>: The term "Plan" shall mean that certain condominium plan marked <u>Exhibit "A"</u> attached hereto. Declarant, Golden State Linen Service, Inc., the owner of the Project, consents to the recordation of the Plan.

2.24. <u>PROJECT</u>: The term "Project" shall mean all of the real property as shown on the Map and all improvements thereon.

2.25. <u>PROJECT DOCUMENTS</u>: The term "Project Documents" shall mean the Articles, the Bylaws, this Declaration, and the Association rules.

2.26. <u>ROOF DECK</u>: The term "Roof Deck" shall mean that portion of the Common Area shown on the Plan designated "Roof Deck." The boundaries and dimensions of the Roof Deck are shown on the Plan.

2.27. <u>UNIT</u>: The term "Unit" shall mean the elements of a Condominium which are separate interests within the Project not owned in common with the Owners of other Condominiums in the Project. The boundaries and dimensions of the Units are as set forth on the Plan. Each Unit includes the airspace encompassed within the boundaries of the Unit, excluding all bearing walls and all walls containing any utility conduit to the unfinished surfaces of any such walls. In interpreting deeds and plans, the existing physical boundaries of the Unit or a Unit reconstructed in substantial accordance with the original plans thereof shall be conclusively presumed to be its boundaries rather than the metes and bounds expressed in deeds or the Plan and regardless of minor variance between boundaries shown on the Plan or in a deed and those of a building.

linen\ccr20516.gsl

# ARTICLE III

## OWNERSHIP AND EASEMENTS

3.1. <u>NON-SEVERABILITY</u>:  The interests in the Common Area cannot be changed after the conveyance of a Condominium.  The undivided interests in the Common Area and the fee title to the respective Units conveyed therewith shall not be separated or separately conveyed.  Each undivided interest in the Common Area shall be deemed to be conveyed or encumbered with the respective Unit even though the description in the grant deed or other instrument of conveyance or encumbrance may refer only to the Unit.

3.2. <u>OWNERSHIP OF UNITS</u>:  Title to each Unit in the Project shall be conveyed in fee to an Owner.  If the Association owns a Unit, the Association shall not be considered an Owner for the purposes of this Declaration.  If more than one (1) person and/or entity (other than the Association) owns an undivided interest in the same Unit, such persons and/or entities shall constitute one (1) Owner.

3.3. <u>OWNERSHIP OF COMMON AREA</u>:  Each Owner of a Unit shall own an undivided 1/33 tenancy-in-common interest in the Common Area with the other Owners of Units in the Project.

3.4. <u>EASEMENTS</u>:  The ownership interests in the Common Area and Units described in this Article III are subject to the easements granted and reserved in this Declaration.  Each of the easements reserved or granted herein shall be deemed to be established upon the recordation of this Declaration and shall thenceforth be deemed to be covenants running with the land for the use and benefit of the Owners and their Units superior to all other encumbrances applied against or in favor of any portion of the Project.  Individual grant deeds to Condominiums may, but shall not be required to, set forth the easements specified in this Article III.

3.4.1.  <u>Easements On Map</u>:  The Common Area and Units are subject to the easements and rights of way shown on the Map.

3.4.2.  <u>Easements For Common Area</u>:  There is reserved and granted to each Unit, as dominant tenement, over and across the Common Area, except for Exclusive Use Common Area, as servient tenement, a non-exclusive appurtenant easement for ingress, egress, use and enjoyment of the Common Area other than Exclusive Use Common Area.

3.4.3.  <u>Exclusive Use Common Area</u>:  There shall be granted to each Unit and each Owner of a Unit an exclusive appurtenant easement for the use, possession and enjoyment of the Balcony and/or Garden Patio adjacent to the Unit and the Parking Space(s), and/or the Roof Deck if and as specifically designated in the initial individual Condominium grant deed.  Parking in all of

3.1

the Parking Spaces shall be subject to the provisions of Section 4.7, below. The Owners who are granted easements to two Parking Spaces may convey one of the two Parking Spaces to another Owner, and only to another Owner, and shall at all times retain one Parking Space. Under no circumstances shall a Parking Space be conveyed to anyone who is not an Owner. Only the Owner of the Unit designated 2825A Myrtle Street who is granted an easement to the Roof Deck shall have access to and the use thereof. The Owner of Unit 990 28th Street is granted the right of access to the roof of Unit 990 28th Street for the purpose of maintaining it in accordance with Section 5.3. The grant of an easement to a Garden Patio shall include the area beneath the surface of the earth that is necessary for the cultivation, landscaping, and drainage of the Garden Patio. All easements to Exclusive Use Common Area are subject, however, to the right of the Association to enter in and upon the Exclusive Use Common Area for the purpose of maintaining and repairing Exclusive Use Common Area if and to the extent required or permitted by this Declaration and for enforcing the terms of this Declaration.

3.4.4. <u>Utilities</u>: Notwithstanding anything expressly or impliedly to the contrary, this Declaration shall be subject to all easements granted by Declarant for the installation and maintenance of utilities and drainage facilities necessary for the development of the Project. There are further reserved and granted for the benefit of each Unit, as dominant tenement, over, under, across and through the Project (including the Common Area and each other Unit, jointly), as the servient tenement, non-exclusive easements for utility services.

3.4.5. <u>Easements for Installation and Maintenance</u>: An easement over and under the Project for the installation, repair and maintenance of electric, telephone, water, gas and sanitary sewer lines and facilities, heating and air conditioning facilities, cable or master radio or television antenna leads, drainage facilities, walkways and landscaping as shown on the recorded map of the Project, and as may be hereafter required or needed to service the Project, is hereby reserved by and to Declarant and its successors and assigns, including the Association.

3.4.6. <u>Encroachment</u>: There are reserved and granted for the benefit of each Unit, as dominant tenement, over, under and across each other Unit and Common Area, as servient tenements, and for the benefit of the Common Area, as dominant tenement, over, under and across each Unit, as servient tenement, non-exclusive easements for encroachment, support, occupancy and use of such portions of Units and/or Common Area as may be encroached upon, used and occupied by the dominant tenement as a result of any original construction design, accretion, erosion, addition, deterioration, decay, errors in original construction, movement, settlement, shifting or subsidence of any building or structure or any portion thereof, or any other cause. In the event any portion

3.2

# ARTICLE V

## IMPROVEMENTS

### 5.1. MAINTENANCE OF COMMON AREA:

5.1.1. __Generally__: The Association shall be responsible for maintenance, repair, replacement, painting and upkeep of all Common Area except as expressly provided in this Declaration. The Association shall keep the Common Area, including the perimeter fence, roofs, structural walls, and all other structural portions of the building(s) within the Project, in good condition and repair, provide for all necessary services and cause all acts to be done which may be necessary or proper to assure the maintenance of the Common Area in good condition. Except for the Roof Deck at 2825B Myrtle Street and the roof of Unit 990 28th Street, only agents of the Association shall have access to the roofs of the Project.

5.1.2. __Notice to Board__: Each Owner shall give to the Board prompt notice of any damage to or defective condition in any part of the Project's sanitary, electrical, heating or other systems serving, located in, or passing through the Owner's Unit.

5.1.3. __Negligence__: The responsibility of the Association for maintenance and repairs shall not extend to repairs or replacements arising out of or caused by the willful or negligent act or neglect of an Owner or Owner's tenants, or customers, suppliers, guests and invitees of such Owner or tenant. The repair or replacement of a portion of the Project resulting from such excluded items shall be the responsibility of the Owner to whom the damage is attributable; provided, however, that if an Owner shall fail to make the repairs or replacements which are the responsibility of such Owner, as provided above, then, the Association shall have the right, but not the obligation, to enter the Unit of the Owner, if necessary, and to make such repairs or replacements, and the cost of such repairs or replacements shall become a reimbursement assessment chargeable to such Condominium and shall be payable to the Association by the Owner thereof.

5.1.4. __Interruption of Service__: The Board shall have the right to interrupt any electrical, mechanical, heating, lighting, ventilating, utility, air conditioning, power, water, cleaning, plumbing, or other service at such times as may be necessary and for as long as may reasonably be required by reason of accidents, strikes, the making or repairs, alterations or improvements, inability to secure a proper supply of fuel, steam, water, electricity, labor or supplies, or by reason of any other cause beyond the control of the Board; provided, however, that any such stoppage or interruption for the purpose of making any alterations or improvements shall be made at such times and in such manner as shall not unreasonably interfere with each Unit Owner's

5.1

use of the Owner's Unit.

5.2. <u>ALTERATIONS TO COMMON AREA</u>:

    5.2.1. <u>Approval</u>: Only the Board shall construct, reconstruct, refinish or alter any portion of the Common Area. A proposal for any construction of or alteration, maintenance or repair to the Common Area may be made at any meeting. A proposal may be adopted by the Board, subject to the limitations contained in this Declaration or the Bylaws. All approvals shall be in writing and maintained as permanent records of the Association.

    5.2.2. <u>Funding</u>: Expenditures for alterations, maintenance or repairs to the Common Area for which a reserve has been collected shall be made from the Association's reserve account. Subject to Section 6.2.7, below, the Board may levy a special assessment to fund any construction, alteration, repair or maintenance of Common Area for which no reserve has been collected or if the Association's reserve account contains insufficient funds to cover the cost of the proposed alterations, maintenance or repairs.

    5.3. <u>MAINTENANCE OF UNITS</u>: Each Owner shall keep the Owner's Unit, including the hot water heater, wall heater(s), and other fixtures and appliances, in good repair and condition. The Owner of Unit 990 28th Street shall also keep the roof of that Unit in good condition and repair, at the Owner's expense. The Owners of Units 990 28th Street and 2825A Myrtle Street shall have sole responsibility to maintain and repair all roof and parapet surfaces of the roofs of their Units. Each Owner shall have the sole responsibility and the exclusive right, at the Owner's sole cost and expense, to:

    5.3.1. Maintain, repair, paint, paper, panel, plaster, tile and finish the interior surfaces of the ceilings, floors and the perimeter walls, of the Owner's Unit;

    5.3.2. Repair, paint, finish, alter, substitute, add or remove any fixtures and utility connections attached to ceilings, floors or walls including, without limitation, all lighting fixtures, telephone facilities, doors and windows within the Unit; and

    5.3.3. Maintain, repair, replace and clean interiors and exteriors of any doors and windows of the Owner's Unit.

    5.4. <u>ASSOCIATION'S RIGHT TO MAINTAIN UNITS</u>: In the event an Owner fails to maintain the Owner's Unit in a manner in which the Board deems necessary to preserve the appearance and value of the Project, the Board may notify the Owner of the work required and request that it be done within sixty (60) days from the giving of such notice. In the event an Owner fails to carry out such maintenance within said period, the Board may, after notice and

5.2

hearing, cause such work to be done and the cost of such work shall be a reimbursement assessment chargeable to such Condominium and shall be payable to the Association by the Owner thereof.

5.5. <u>ALTERATIONS TO UNITS</u>: Owners may alter or remodel the interiors of their Units, if the alterations do not affect or impair the structural integrity of the Unit or of the building containing the Unit and if the Owner complies with all laws and ordinances regarding alterations and remodeling. Each Owner shall maintain the roll-up doors, if any, for the Owner's Unit. An Owner may, at the Owner's own expense, install an electric opener for the Owner's roll-up door. An Owner may also, with the consent of the Association, which shall not be unreasonably withheld, replace the roll-up door with a permanent wall. Any such wall must conform to the style and architecture of the Project.

5.6. <u>EXCLUSIVE USE COMMON AREA</u>: Each Owner shall be responsible for and shall maintain the Owner's Balcony(ies) in good condition and repair at the Owner's expense. Any fence enclosing a Garden Patio shall be maintained in good condition by the Owner to whom the Garden Patio has been granted as an exclusive easement. Fences between Garden Patios, if any, shall be maintained by the Owners who have been granted the adjacent Garden Patios, the cost of which shall be shared equally. Each Owner shall maintain and otherwise care for all landscaping, plants, and planters within the Owner's Garden Patio at the Owner's sole expense. All Garden Patios shall be kept free from debris.

5.7. <u>LANDSCAPING:</u> All landscaping in the Project shall be maintained and cared for in a manner consistent with the standards of design and quality as originally established by Declarant. Specific restrictions on landscaping may be established in the Association rules. All landscaping shall be maintained in a neat and orderly condition. Any weeds or diseased or dead lawn, trees, ground cover or shrubbery shall be removed and replaced. All lawn areas shall be neatly mowed and trees and shrubs shall be neatly trimmed.

5.8. <u>RIGHT OF ENTRY</u>: The Board may enter any Unit and Exclusive Use Common Area whenever entry is necessary in connection with the performance of any maintenance or construction which the Board is authorized to undertake. Entry shall be made with as little inconvenience to an Owner as practicable and only after reasonable advance written notice of not less than twenty-four (24) hours, except in emergency situations.

5.9. <u>DAMAGE AND DESTRUCTION</u>: The term "repair and reconstruction" shall mean repairing or restoring the Common Area, including structural walls and all other structural portions of the building(s) in the Project to substantially the same condition as it existed prior to a fire or other casualty with the improvements, to the extent possible, having the same vertical and horizontal boundaries and location as before. If fire or other casualty

5.3

# ARTICLE VI

## FUNDS AND ASSESSMENTS

6.1. COVENANTS TO PAY: Declarant and each Owner covenants and agrees to pay to the Association the assessments and any additional charges levied pursuant to this Article VI.

6.1.1. Liability for Payment: The obligation to pay assessments shall run with the land so that each successive record Owner of a Condominium shall in turn become liable to pay all such assessments. No Owner may waive or otherwise escape personal liability for assessments or release the Condominium owned by the Owner from the liens and charges hereof by non-use of the Common Area, abandonment of the Condominium or any other attempt to renounce rights in the Common Area or the facilities or services within the Project. Each assessment shall constitute a separate assessment and shall also be a separate, distinct and personal obligation of the Owner of the Condominium at the time when the assessment was levied and shall bind the Owner's heirs, devisees, personal representatives and assigns. Any assessment not paid within fifteen (15) days after it becomes due is delinquent. The personal obligation of an Owner for delinquent assessments shall not pass to a successor Owner unless the personal obligation is expressly assumed by the successor Owner. No such assumption of personal liability by a successor Owner (including a contract purchaser under an installment land contract) shall relieve any Owner from personal liability for delinquent assessments. After an Owner transfers fee title of record to the Owner's Condominium, the Owner shall not be liable for any charge thereafter levied against the Condominium.

6.1.2. Funds Held in Trust: The assessments collected by the Association shall be held by the Association for and on behalf of each Owner and shall be used solely for the operation, care and maintenance of the Project as provided in this Declaration. Upon the sale or transfer of any Condominium, the Owner's interest in the funds shall be deemed automatically transferred to the successor in interest of such Owner.

6.1.3. No Offsets: No offsets against any assessment shall be permitted for any reason, including, without limitation, any claim that the Association is not properly discharging its duties.

6.2. REGULAR ASSESSMENTS

6.2.1. Commencement of Regular Assessments: Regular assessments for each fiscal year shall be established when the Board approves the budget for that fiscal year. Regular assessments shall be levied on a fiscal year basis. Unless

6.1

otherwise specified by the Board, regular assessments shall be due and payable in monthly installments on the first day of each month during the term of this Declaration. Regular assessments shall commence for all Condominiums on the first day of the first month following the month in which the first Condominium of the Project is conveyed to an Owner other than Declarant. Subject to Sections 6.2.6, and 6.2.7, below, the Association shall levy regular and special assessments sufficient to perform its obligations under the Project Documents.

**6.2.2.** __Budgeting__:

(a) __Initial Fiscal Year__: No later than the date on which regular assessments are scheduled to commence, the Board shall cause to be prepared and shall distribute to each Member a pro forma operating statement (budget) for the first fiscal year. The budget shall estimate the total expenditures to be paid by the Association for routine maintenance and operation of the Project and reasonable reserves for contingencies and for the replacement and deferred maintenance of capital improvements.

(b) __Subsequent Fiscal Years__: For each subsequent fiscal year, the Association shall estimate the total amount needed annually to operate and maintain the Project and to establish reasonable reserves for replacement of any improvements within the Project for which the Association is responsible. The Board shall cause to be prepared a budget for each such fiscal year itemizing the operation, maintenance and reserve requirements for that fiscal year. Such annual budget shall be distributed to the Members prior to its adoption by the Board along with an annual financial report, including a balance sheet and income statement, for the preceding fiscal year. The total amount shall be allocated against all Condominiums in the Project as regular assessments, subject to the limitations set forth in this Declaration or the Bylaws. Written notice of the amount of to be levied against a Condominium shall be sent to the Owner thereof not less than forty-five (45) days nor more than sixty (60) days prior to the beginning of the year.

**6.2.3.** __Allocation of Regular Assessments__: The items in the budget designated as reserves for painting and roof replacement, insurance premiums, and electricity, gas, and water not separately metered to the Units shall be allocated to all Units in the same proportion that the square footage of each Unit bears to the total square footage of all Units in the Project. The square footage in the Units shall be determined by including the square footage of any mezzanines or lofts. For purposes of allocating assessments, Unit C, which may be used only as a day studio and/or office, shall be treated as if it contained 50 percent of the actual number of square feet therein. All other items in the budget shall be allocated 98.5 percent to all Units other than Unit C, and divided equally among them, and 1.5 percent

6.2

to Unit C.

6.2.4.  <u>Non-Waiver of Assessments</u>:  If before the expiration of any fiscal year the Association fails to fix regular assessments for the next fiscal year, the regular assessment established for the preceding year shall continue until a new regular assessment is fixed.

6.2.5.  <u>Restriction for Tax Exemption</u>: Notwithstanding any other provision in the Project Documents, the Board shall prepare its annual budget and otherwise conduct the business of the Association in such a manner that the Association shall qualify and be considered as an organization exempt from federal and state income taxes pursuant to Internal Revenue Code Section 528 and California Revenue and Taxation Code Section 23701t and any amendments thereto. As long as either federal or state regulations may so require for the Association to receive tax exempt status, the following budgeting limitations shall be observed:

(a)  <u>On Gross Income</u>:  Sixty percent (60%) or more of the gross income of the Association for each taxable year shall consist solely of amounts received as membership dues, fees and assessments from Members;

(b)  <u>On Nature of Expenditures</u>:  Ninety percent (90%) or more of the expenditures of the Association for the taxable year shall be expenditures solely for providing management, maintenance and care of the property of the Association or for the general welfare of the Members;

(c)  <u>On Benefit to Individuals</u>:  No part of the net earnings of the Association shall inure to the benefit of any Member or individual (other than those benefits provided by the Association's management, maintenance and care of property within the Project or by a rebate of excess assessments);

(d)  <u>On Expenditures for Utilities</u>:  The Association shall not provide or maintain facilities to provide utilities for its Members (provided, however, that the Association may charge for commonly metered services provided to the Project by utility companies); and

(e)  <u>On Funds for Capital Improvements</u>:  Amounts received as assessments which are not expended for Association purposes during the taxable year (funds collected for contingencies and deferred maintenance, repair and replacement of capital improvements), not including excess funds in the current operation account, shall be transferred or deposited to and held in a separate trust account(s) to provide for management, maintenance and care of the property within the Project and to promote the general welfare of the Members.

6.3

**6.2.6** **Limit on Regular Assessments:** Annual increases in regular assessments for any fiscal year shall not be imposed unless the Board has complied with Section 6.9.1, below, with respect to that fiscal year, or has obtained the approval of Owners, constituting a quorum, as specified in Section 6.2.8, below, casting a majority of the votes at a meeting or election of the Association. The Board shall provide notice by first class mail to the Owners of the Units of any increase in the regular or special assessments of the Association, not less than thirty (30) nor more than sixty (60) days prior to the increased assessment becoming due. The Board may not, without the vote or written assent of the Members, constituting a quorum, casting a majority of the votes at a meeting or election of the Association, impose a regular assessment per Unit which is more than twenty percent (20%) greater than the regular assessment per Unit for the immediately preceding fiscal year.

**6.2.7** **Limit on Special Assessments:** The Board may not, without the vote or written assent of the Members, constituting a quorum, casting a majority of the votes at a meeting or election of the Association, impose special assessments within a single fiscal year which in the aggregate exceed five percent (5%) of the budgeted gross expenses for said fiscal year, except for emergency situations. An emergency situation is any one of the following:

(a) An extraordinary expense required by an order of a court.

(b) An extraordinary expense necessary to repair or maintain any part of the Project for which the Association is responsible where a threat to personal safety is discovered.

(c) An extraordinary expense necessary to repair or maintain any part of the Project for which the Association is responsible that could not have been reasonably foreseen by the Board in preparing and distributing the operating budget; provided, however, that prior to the imposition or collection of a special assessment the Board shall pass a resolution containing written findings as to the necessity of the extraordinary expense involved and why the expense was not or could not have been reasonably foreseen in the budgeting process, and the resolution shall be distributed to the Members with the notice of assessment.

**6.2.8.** **Quorum Requirement.** For purposes of Sections 6.2.6 and 6.2.7, above, a quorum of the Members shall be more than fifty percent (50%) of the Members of the Association. Any meeting or election of the Association for purposes of complying with Sections 6.2.6 and 6.2.7, above, shall be conducted in accordance with Chapter 5 and Section 7613 of the Corporations Code.

Case: 14-44083    Doc# 72-1    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 19 of 34

shall be clearly designated as the current operation account and the reserve account. The types of accounts in which funds may be held shall be limited to insured accounts (checking, savings or other) with a savings and loan association or bank or money market mutual funds investing solely in United States Treasury securities or in repurchase agreements secured by United States Treasury securities. In addition, direct purchase of United States Treasury securities maturing in six (6) months or less shall be considered an "account" in which funds may be invested for purposes of this Section 6.5.1. The Board shall deposit those portions of the assessments collected for current maintenance and operation into the current operation account(s) and shall deposit those portions of the assessments collected as reserves for contingencies and for replacement and deferred maintenance of capital improvements into the reserve account(s).

6.5.2. <u>Current Operation Account</u>: All of the following may be paid from the Association's current operation account:

(a) All costs of enforcing the provisions of the Project Documents;

(b) Taxes and assessments, if any, levied or assessed separately against the Common Area;

(c) Sums necessary to discharge any lien or encumbrance, including taxes, levied against any Condominium which constitutes a lien against any portion of the Common Area;

(d) Insurance premiums and costs for policies purchased for the benefit of the Association;

(e) Water, sewer, garbage, electrical, gas, telephone and other necessary utility services for the Common Area and the Units to the extent such services are not separately metered or charged to individual Units;

(f) Costs of routine maintenance, repair, upkeep, replacement of or additions to Common Area and other portions of the Project for which the Association is responsible; and

(g) All other goods, materials, supplies, furniture, labor, services, maintenance, repairs or alterations which the Association is authorized to secure and pay for pursuant to the terms of this Declaration or by law, other than those to be expended from the reserve account(s).

6.5.3. <u>Reserve Account</u>: The Association shall pay out of the reserve account only those costs that are attributable to the maintenance, repair or replacement of capital improvements for which reserves have been collected and held. No portion of a

6.6



EXHIBIT "A"

CONDOMINIUM PLAN

FILBERT ST.

FIRST FLOOR

MYRTLE ST.

Case: 14-44085   Doc# 73-1   Filed: 11/03/15   Entered: 11/03/15 19:19:30   Page 21 of 34

EXHIBIT C



N72°53'39"W 125.00'

FIRS

SURVEYOR'S STATEMENT
I HEREBY CERTIFY THAT I AM A LICENSED LAND SURVEYOR IN THE
STATE OF CALIFORNIA : THAT THE BUILDINGS ARE OR WILL BE AS SHOWN:
AND THAT THIS CONDOMINIUM PLAN CONSISTING OF FOUR (4) SHEETS WAS
PREPARED UNDER MY SUPERVISION AND IS A DESCRIPTION OF A
CONDOMINIUM PROJECT WHICH REFERS TO THE BUILDING PERIMETERS ON
THE GROUND AND A THREE DIMENSIONAL DESCRIPTION OF THE PROJECT
IN SUFFICIENT DETAIL TO IDENTIFY THE COMMON AREAS AND EACH
SEPARATE INTEREST PURSUANT TO THE REQUIREMENTS OF CALIFORNIA
CIVIL CODE SECTION 1351 (E).

DAVID M. LOGAN        L.S.5003
REGISTRATION EXPIRES DEC. 31, 2001

PARKING EXCLUSIVE TO
990  28TH ST.

FILBERT ST.

990 28TH ST.

COMMON

COMMON

DAY STUDIO C

ENTRY

5    4

6    7

8

9

10

11

27    26    25    24

N72°53'39"W

28TH

**Date:** Mon, 13 Oct 2014 18:39:48 -0800
**From:** "Bayside Court Board of Directors" <baysidecourt@yahoo.com>
**To:** "SarahJane Parker" <sparke21@gmail.com>, "Scott Sorensen" <scott@relsfoods.com>
**CC:** <vidacapitalgroup@gmail.com>, "Marc Fong" <MFong@fonglaw.com>
**Subject:** Unit 990 Parking Identification

Dear Everyone Involved With The Unit 990 Use, Sale, & Purchase:

We wanted to bring to your attention findings made yesterday at Bayside Court while measurements were being taken for the new refuse processing system enclosure, (which will be replacing the damaged "Garbage Enclosure" shortly).

1) Attached is the official document recorded January 12, 2001 which details the parking plan in effect. Please refer to it.

2) Attached is the Grant Deed recorded September 28, 2005 which details Unit 990's deeded parking allocation. Please refer to it.

3) Here is the "Parcel Three:" descriptive text which describes the parking that is allotted to Unit 990 per the Grant Deed noted in item (2) above:

" *The exclusive right to use the parking area(s) designated F-14 on the Parking Exclusive to 990 28th Street on the Parking Plan attached as Exhibit "A" to the Second Amendment to Covenants, Conditions, and Restrictions referred to above.* "

This clearly denotes that space F-14 is the sole deeded space, and that all other parking otherwise shown on the plan is not deeded to Unit 990.

4) If one goes on site and pulls the dimensions shown on the Parking Plan, one finds that the plan as depicted is highly inaccurate. Pulling a tape from the northwest corner of the Bayside Property 43.0' to locate the northwest corner of the "Garbage Enclosure" which is clearly dimensioned as 18.0' x 28.0', places the Garbage Enclosure area described, well beyond the edge of the "F Parking Lot" space's southern border line.

5) The BCOA is installing a new Garbage Enclosure that will match that dimensioned on the Parking Plan. This will cause it to project well into what the plan labels as "Parking Exclusive to 990 28th St".

6) The only parking space deeded to Unit 990 is #F14. This is consistent with the balance of the project and the fact that Unit 990, though very large, is mostly uninhabited empty warehouse-as originally designed, with a single medium sized living space installed into it. Other similarly sized spaces have 1 minimum and 2 maximum parking spaces. There are no estoppel issues here as the area labeled as "Parking Exclusive to 990 28th St" shown on the plan has never been marked onsite, or used by anyone special in particular. Unit 990 has had a maximum of two concurrent owners in its entire history possessing a maximum of two vehicles. Unit 990 has never admitted to any additional tenancy.

7) The BCOA Board has been flagging gross inaccuracies with the marketing materials associated with Unit 990 since same began being published in 2013. The representation that Unit 990 has "7 deeded spaces" as detailed on the attached MLS is without foundation in law. The BCOA Document #14031601LJ (2 pages total), executed 03/16/2014 after Unit 990 was put into contract, is no longer a current document and has long been superseded. You are being duly so advised here so that we can be assured that these details are clear.

In summary we want to bring this to your attention at once as it may be material to your real estate transaction-whose status we are wholly unaware of. The BCOA will very shortly begin construction as advised above, and may choose to open up the gate that is now bolted shut in order to create and obtain access to new parking spaces it needs to better serve its assessment paying membership.

Regards,

-The BCOA Board of Directors

==================================================================
Case: 14-44083   Doc# 72-1   Filed: 11/03/15   Entered: 11/03/15 19:19:30   Page 23 of 34

EXHIBIT D

The BCOA is an unrepresented party at present, this status will change in November.

The Board is tendering to your client, Ms. Parker (via your office), the following final October Settlement Offer.

This offer is good until the end of this month, after which time it will be rescinded.

If your client wishes to accept the offer, please clearly so notify us on or before 6:00pm October 31, 2014-and we can work out the details the following week. The deadline is important to the BCOA as we must adopt a budget and produce an annual disclosure for distribution to the BCOA Membership in November, as you know.

If the offer is not accepted, we will be moving forward with our lawsuit with new counsel, and cross complaining Unit 990's tenant & realtor among other things-inclusive of filing multiple adverse claims with the Bankruptcy Court. This will occur if you manage to maintain the Chapter 13 filing (which is full of errors by the way) vis a vis the Trustee's current valid move to dismiss, or convert to Chapter 7 as has always been expected. (The original Chapter 13 being a familiar stall tactic-just as it was for BCOA Unit C in 2006-2008):

1.0 Settlement Amount: $25,000., plus any additional legal costs incurred after 10/31/2014 right up until Settlement Agreement signing by Parker, inclusive of any such costs associated with any breach of the Settlement Agreement by Parker after said signing.

2.0 Settlement Requirements:

2.1 Parker to continuously try to sell or short sell Unit 990 until a sale occurs.

2.2 Parker agrees never to own property in the BCOA again.

2.3 Unit 990's present realtor is removed from the Unit 990 sale representation, and a competent realtor found to replace her.

2.4 Parker to dismiss all of her cross complaints with prejudice.

2.5 BCOA to dismiss its lawsuit with prejudice.

2.6 All parties agree not to refile any legal actions that were tabled with one another pre settlement agreement.

2.7 Unit 990 liens stay in place. BCOA will agree not to file foreclosure proceedings of any type for a 6 month period from settlement.

2.8 BCOA will accept 60 cents on the dollar for its existing liens.

2.9 Parker to exit Bankruptcy, and agree not to refile for 90 days minimum.

Settling now will make it far easier for your client to structure an effective Unit 990 sale, and stay out of Bankruptcy.

Indeed, given current and projected market conditions in concert with the well demonstrated assessment revision power of the association and the huge parking area in dispute-there may be a viable way for your client to sell 990 without the short sale path that has proven so problematic.

Unit C was a very complex problem case for us-and we managed to put that one to bed, send the former owner on his way, and close escrow on the property this month after his BK13 filing in mid July.

We are confident there is a viable way to resolve the Unit 990 problem-if there is a true willingness to negotiate in complete good faith, which of course involves consistent follow thru.

Regards,

The BCOA Board of Directors

EXHIBIT E

# BCOA Late Payment Demand & Notice of Delinquency

| Member Account |
| --- |
| Sarah Jane Parker Arnett 099001<br>990 28th Street<br>Oakland, CA 94608 |

| Payment Instructions |
| --- |
| Write Your Account # on Check and Send Payment To:<br>Bayside Court Owners Association<br>First Bank<br>P.O. Box 15031<br>Vallejo, CA 94591-1931 |

| Account # | Demand Date | Amount Due |
| --- | --- | --- |
| 112-099001 | 12/2/14 | $169,669.88 |

| Date | Transaction | Amount | Balance |
| --- | --- | --- | --- |
| 09/29/12 | Balance forward | | 0.00 |
| 09/30/12 | INV #099001-1209. Due 09/30/12. | 9,791.90 | 9,791.90 |
| 09/30/12 | GENJRNL #FL. to adjust to actual at 9/30/12 | -4,268.11 | 5,523.79 |
| 10/01/12 | INV #099001-1210. Due 10/01/12. | 768.93 | 6,292.72 |
| 10/01/12 | GENJRNL #FLR. to adjust to actual at 9/30/12 | 4,268.11 | 10,560.83 |
| 10/16/12 | Due 10/16/12. Late Fee | 76.89 | 10,637.72 |
| 10/23/12 | PMT #221722883. | -1,000.00 | 9,637.72 |
| 10/31/12 | INV #FC 22. Due 10/31/12. Finance Charge | 97.52 | 9,735.24 |
| 11/01/12 | INV #099001-1211. Due 11/01/12. | 1,556.64 | 11,291.88 |
| 11/16/12 | Due 11/16/12. Late Fee | 156.65 | 11,448.53 |
| 11/30/12 | INV #FC 23. Due 11/30/12. Finance Charge | 111.55 | 11,560.08 |
| 12/01/12 | INV #099001-1212. Due 12/01/12. | 1,566.54 | 13,126.62 |
| 12/16/12 | Due 12/16/12. Late Fee | 156.65 | 13,283.27 |
| 12/31/12 | INV #FC 24. Due 12/31/12. Finance Charge | 133.99 | 13,417.26 |
| 01/01/13 | INV #099001-1301. Due 01/01/13. | 1,879.85 | 15,297.11 |
| 01/16/13 | Due 01/16/13. Late Fee | 187.98 | 15,485.09 |
| 01/24/13 | INV #Documents. Due 01/24/13. | 350.00 | 15,835.09 |
| 01/31/13 | INV #FC 25. Due 01/31/13. Finance Charge | 166.88 | 16,001.97 |
| 02/01/13 | INV #099001-1302. Due 01/15/13. | 1,879.85 | 17,881.82 |
| 02/04/13 | INV #AttorneyFee. Due 02/04/13. | 877.20 | 18,759.02 |
| 02/16/13 | Due 02/16/13. Late Fee | 187.98 | 18,947.00 |
| 02/28/13 | INV #FC 71. Due 02/28/13. Finance Charge | 172.26 | 19,119.26 |
| 03/01/13 | INV #0990011303b. Due 03/01/13. | 16,918.65 | 36,037.91 |
| 03/01/13 | INV #099001-1303. Due 03/01/13. | 1,879.85 | 37,917.76 |
| 03/02/13 | Due 03/02/13. Late Fee | 1,879.85 | 39,797.61 |

| 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE |
| --- | --- | --- | --- |
| 3,354.09 | 1,550.00 | 3,271.76 | 159,656.42 |

## !!! IMPORTANT INFORMATION ABOUT LATE PAYMENTS !!!

It is very important for you to be aware that amounts shown on this notice are delinquent!

This CA Civil Code 5650(b) responsive notice of delinquency is sent to all delinquent member accounts. Delinquent monthly assessments not paid within 30 days after this notice of delinquency will cause your ENTIRE ANNUAL ASSESSMENT to become due and payable pursuant to CC&R section 6.6.3 .

CC&R 6.6.4 allows the BCOA to levy all costs of delinquent account collections against your member account. These costs can be very significant and can easily exceed the "amount due" shown on this document.

CC&R section 6.6.2 enables the Association to sell a member's property to the highest bidder in order to satisfy the lien present against it, pursuant to CC&R section 6.6.1.

It is therefore very important that you provide full payment to avoid the foregoing CC&R 6.6 enforcement activities from affecting your account and your Association property.

Bayside Court Owners Association - PO Box 81 - Willits, CA 95490 - (707) 459-2287 - baysidecourt@yahoo.com

Case: 14-44083    Doc# 72-1    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 25 of 34

EXHIBIT F

# BCOA Late Payment Demand & Notice of Delinquency

| Member Account |
|---|
| Sarah Jane Parker Arnett 099001 |
| 990 28th Street |
| Oakland, CA 94608 |

me

| Payment Instructions |
|---|
| Write Your Account # on Check and Send Payment To: |
| Bayside Court Owners Association |
| First Bank |
| P.O. Box 15031 |
| Vallejo, CA 94591-1931 |

| Account # | Demand Date | Amount Due |
|---|---|---|
| 112-099001 | 12/2/14 | $169,669.88 |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 03/12/13 | INV #LegalPrep. Due 03/12/13. | 1,075.00 | 40,872.61 |
| 03/18/13 | INV #FC 72. Due 03/18/13. Finance Charge | 123.03 | 40,995.64 |
| 03/31/13 | INV #FC 75. Due 03/31/13. Finance Charge | 170.62 | 41,166.26 |
| 05/02/13 | INV #FC 80. Due 05/02/13. Finance Charge | 433.12 | 41,599.38 |
| 06/04/13 | INV #FC 83. Due 06/04/13. Finance Charge | 451.35 | 42,050.73 |
| 07/01/13 | INV #0990011306V. Due 07/01/13. | 500.00 | 42,550.73 |
| 07/02/13 | INV #FC 86. Due 07/02/13. Finance Charge | 426.37 | 42,977.10 |
| 08/01/13 | INV #AttorneyFee. Due 08/01/13. | 4,378.91 | 47,356.01 |
| 08/01/13 | INV #0990011307V. Due 08/01/13. | 2,550.00 | 49,906.01 |
| 08/02/13 | Due 08/02/13. Late Fee | 280.00 | 50,186.01 |
| 08/02/13 | INV #FC 91. Due 08/02/13. Finance Charge | 470.59 | 50,656.60 |
| 08/14/13 | INV #AttorneyFee. Due 08/14/13. | 982.60 | 51,639.20 |
| 08/23/13 | INV #099001. Due 09/15/13. | 48,311.76 | 99,950.96 |
| 08/23/13 | PMT #002911056. JP Cruz settlement check | -16,106.75 | 83,844.21 |
| 09/01/13 | INV #0990011308V. Due 09/01/13. | 1,550.00 | 85,394.21 |
| 09/02/13 | INV #FC 95. Due 09/02/13. Finance Charge | 384.67 | 85,778.88 |
| 09/02/13 | Due 09/02/13. Late Fee | 255.00 | 86,033.88 |
| 09/03/13 | INV #AttorneyFee. Due 09/03/13. | 1,436.50 | 87,470.38 |
| 10/02/13 | INV #0990011309V. Due 10/02/13. | 1,500.00 | 88,970.38 |
| 10/02/13 | Due 10/02/13. Late Fee | 155.00 | 89,125.38 |
| 10/02/13 | INV #AttorneyFee. Due 10/02/13. | 284.50 | 89,409.88 |
| 10/02/13 | INV #FC 99. Due 10/01/13. Finance Charge | 726.27 | 90,136.15 |
| 11/02/13 | INV #FC 103. Due 11/02/13. Finance Charge | 901.36 | 91,037.51 |
| 11/02/13 | Due 11/02/13. Late Fee | 150.00 | 91,187.51 |
| 11/02/13 | INV #0990011310V. Due 11/02/13. | 1,550.00 | 92,737.51 |

| 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE |
|---|---|---|---|
| 3,354.09 | 1,550.00 | 3,271.76 | 159,656.42 |

## !!! IMPORTANT INFORMATION ABOUT LATE PAYMENTS !!!

It is very important for you to be aware that amounts shown on this notice are delinquent!

This CA Civil Code 5650(b) responsive notice of delinquency is sent to all delinquent member accounts. Delinquent monthly assessments not paid within 30 days after this notice of delinquency will cause your ENTIRE ANNUAL ASSESSMENT to become due and payable pursuant to CC&R section 6.6.3 .

CC&R 6.6.4 allows the BCOA to levy all costs of delinquent account collections against your member account. These costs can be very significant and can easily exceed the "amount due" shown on this document.

CC&R section 6.6.2 enables the Association to sell a member's property to the highest bidder in order to satisfy the lien present against it, pursuant to CC&R section 6.6.1.

It is therefore very important that you provide full payment to avoid the foregoing CC&R 6.6 enforcement activities from affecting your account and your Association property.

Bayside Court Owners Association - PO Box 81 - Willits, CA 95490 - (707) 459-2287 - baysidecourt@yahoo.com

er

Case: 14-44083    Doc# 72-1    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 26 of 34

# BCOA Late Payment Demand & Notice of Delinquency

| Member Account |
|---|
| Sarah Jane Parker Arnett 099001<br>990 28th Street<br>Oakland, CA 94608 |

| Payment Instructions |
|---|
| Write Your Account # on Check and Send Payment To:<br>Bayside Court Owners Association<br>First Bank<br>P.O. Box 15031<br>Vallejo, CA 94591-1931 |

| Account # | Demand Date | Amount Due |
|---|---|---|
| 112-099001 | 12/2/14 | $169,669.88 |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 11/02/13 | INV #AttorneyFee. Due 11/15/13. | 1,155.50 | 93,893.01 |
| 11/19/13 | PMT #888888. | -2,067.84 | 91,825.17 |
| 11/26/13 | INV #13112601Doc. Due 11/26/13. | 660.00 | 92,485.17 |
| 11/27/13 | PMT #888888. | -2,067.84 | 90,417.33 |
| 12/01/13 | INV #0990011311v. Due 12/01/13. | 500.00 | 90,917.33 |
| 12/02/13 | INV #FC 107. Due 12/02/13. Finance Charge | 911.82 | 91,829.15 |
| 12/02/13 | Due 12/02/13. Late Fee | 155.00 | 91,984.15 |
| 12/02/13 | INV #0990011311V. Due 12/02/13. | 1,500.00 | 93,484.15 |
| 12/21/13 | INV #099001-Coll. Due 12/21/13. | 982.57 | 94,466.72 |
| 01/01/14 | INV #099001-2014. Due 12/15/13. | 22,558.20 | 117,024.92 |
| 01/03/14 | INV #FC 110. Due 01/03/14. Finance Charge | 1,017.13 | 118,042.05 |
| 01/03/14 | Due 01/03/14. Late Fee | 2,521.82 | 120,563.87 |
| 01/03/14 | INV #0990011312V. Due 01/03/14. | 1,550.00 | 122,113.87 |
| 02/03/14 | INV #FC 115. Due 02/03/14. Finance Charge | 1,267.15 | 123,381.02 |
| 02/03/14 | Due 02/03/14. Late Fee | 155.00 | 123,536.02 |
| 02/03/14 | INV #0990011401v. Due 02/03/14. | 1,550.00 | 125,086.02 |
| 03/04/14 | INV #FC 117. Due 03/04/14. Finance Charge | 1,223.03 | 126,309.05 |
| 03/04/14 | Due 03/04/14. Late Fee | 155.00 | 126,464.05 |
| 03/04/14 | INV #0990011402v. Due 03/04/14. | 1,400.00 | 127,864.05 |
| 04/01/14 | INV #0990011403v. Due 04/01/14. | 2,000.00 | 129,864.05 |
| 04/02/14 | INV #FC 122. Due 04/02/14. Finance Charge | 1,249.52 | 131,113.57 |
| 04/02/14 | Due 04/02/14. Late Fee | 140.00 | 131,253.57 |
| 05/01/14 | INV #099001#F7.0. Due 05/01/14. | 75.00 | 131,328.57 |
| 05/02/14 | INV #0990011404v. Due 05/02/14. | 1,500.00 | 132,828.57 |
| 05/02/14 | INV #FC 123. Due 05/02/14. Finance Charge | 1,351.42 | 134,179.99 |

| 1-30 DAYS<br>PAST DUE | 31-60 DAYS<br>PAST DUE | 61-90 DAYS<br>PAST DUE | OVER 90 DAYS<br>PAST DUE |
|---|---|---|---|
| 3,354.09 | 1,550.00 | 3,271.76 | 159,656.42 |

## !!! IMPORTANT INFORMATION ABOUT LATE PAYMENTS !!!

It is very important for you to be aware that amounts shown on this notice are delinquent!

This CA Civil Code 5650(b) responsive notice of delinquency is sent to all delinquent member accounts. Delinquent monthly assessments not paid within 30 days after this notice of delinquency will cause your ENTIRE ANNUAL ASSESSMENT to become due and payable pursuant to CC&R section 6.6.3 .

CC&R 6.6.4 allows the BCOA to levy all costs of delinquent account collections against your member account. These costs can be very significant and can easily exceed the "amount due" shown on this document.

CC&R section 6.6.2 enables the Association to sell a member's property to the highest bidder in order to satisfy the lien present against it, pursuant to CC&R section 6.6.1.

It is therefore very important that you provide full payment to avoid the foregoing CC&R 6.6 enforcement activities from affecting your account and your Association property.

Bayside Court Owners Association - PO Box 81 - Willits, CA 95490 - (707) 459-2287 - baysidecourt@yahoo.com

# BCOA Late Payment Demand & Notice of Delinquency

| Member Account | Payment Instructions |
|---|---|
| Sarah Jane Parker Arnett 099001<br>990 28th Street<br>Oakland, CA 94608 | Write Your Account # on Check and Send Payment To:<br>Bayside Court Owners Association<br>First Bank<br>P.O. Box 15031<br>Vallejo, CA 94591-1931 |

| Account # | Demand Date | Amount Due |
|---|---|---|
| 112-099001 | 12/2/14 | $169,669.88 |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 05/02/14 | Due 05/02/14. Late Fee | 200.00 | 134,379.99 |
| 06/01/14 | INV #0990011405V. Due 06/01/14. | 2,700.00 | 137,079.99 |
| 06/01/14 | INV #099001-F7.0. Due 06/01/14. | 75.00 | 137,154.99 |
| 06/02/14 | INV #FC 129. Due 06/02/14. Finance Charge | 1,413.12 | 138,568.11 |
| 06/02/14 | Due 06/02/14. Late Fee | 157.50 | 138,725.61 |
| 07/01/14 | INV #0990011406V. Due 07/01/14. | 1,500.00 | 140,225.61 |
| 07/01/14 | Due 08/02/14. Late Fee | 277.50 | 140,503.11 |
| 07/01/14 | INV #990Collect. Due 07/01/14. | 10,101.17 | 150,604.28 |
| 07/02/14 | INV #FC 137. Due 07/02/14. Finance Charge | 1,410.32 | 152,014.60 |
| 08/01/14 | INV #0990011407V. Due 08/01/14. | 1,550.00 | 153,564.60 |
| 08/02/14 | INV #FC 142. Due 08/02/14. Finance Charge | 1,590.02 | 155,154.62 |
| 08/02/14 | Due 08/02/14. Late Fee | 1,160.12 | 156,314.74 |
| 09/01/14 | INV #0990011408V. Due 09/01/14. | 1,550.00 | 157,864.74 |
| 09/02/14 | INV #FC 145. Due 09/02/14. Finance Charge | 1,636.68 | 159,501.42 |
| 09/02/14 | Due 09/02/14. Late Fee | 155.00 | 159,656.42 |
| 10/01/14 | INV #0990011409V. Due 10/01/14. | 1,500.00 | 161,156.42 |
| 10/02/14 | INV #FC 151. Due 10/02/14. Finance Charge | 1,616.76 | 162,773.18 |
| 10/02/14 | Due 10/02/14. Late Fee | 155.00 | 162,928.18 |
| 11/01/14 | INV #0990011410V. Due 11/01/14. | 1,550.00 | 164,478.18 |
| 11/02/14 | INV #FC 153. Due 11/02/14. Finance Charge | 1,704.09 | 166,182.27 |
| 11/02/14 | Due 11/02/14. Late Fee | 150.00 | 166,332.27 |
| 12/01/14 | INV #0990011411V. Due 12/01/14. | 1,500.00 | 167,832.27 |
| 12/02/14 | INV #FC 154. Due 12/02/14. Finance Charge | 1,682.61 | 169,514.88 |
| 12/02/14 | Due 12/02/14. Late Fee | 155.00 | 169,669.88 |
| 12/02/14 | Amount Due | | 169,669.88 |

| 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE |
|---|---|---|---|
| 3,354.09 | 1,550.00 | 3,271.76 | 159,656.42 |

## !!! IMPORTANT INFORMATION ABOUT LATE PAYMENTS !!!

It is very important for you to be aware that amounts shown on this notice are delinquent!

This CA Civil Code 5650(b) responsive notice of delinquency is sent to all delinquent member accounts. Delinquent monthly assessments not paid within 30 days after this notice of delinquency will cause your ENTIRE ANNUAL ASSESSMENT to become due and payable pursuant to CC&R section 6.6.3 .

CC&R 6.6.4 allows the BCOA to levy all costs of delinquent account collections against your member account. These costs can be very significant and can easily exceed the "amount due" shown on this document.

CC&R section 6.6.2 enables the Association to sell a member's property to the highest bidder in order to satisfy the lien present against it, pursuant to CC&R section 6.6.1.

It is therefore very important that you provide full payment to avoid the foregoing CC&R 6.6 enforcement activities from affecting your account and your Association property.

Bayside Court Owners Association -  PO Box 81 - Willits, CA 95490 - (707) 459-2287 - baysidecourt@yahoo.com

Case: 14-44083    Doc# 72-1    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 28 of 34

# BCOA Member Account Invoice

| Invoice # |
|---|
| 099001-2015 |

| Member Account |
|---|
| Sarah Jane Parker Arnett 099001 |
| 990 28th Street |
| Oakland, CA 94608 |

| Payment Instructions |
|---|
| Write Your Account # on Check and Send Payment To: |
| Bayside Court Owners Association |
| First Bank |
| PO Box 15031 |
| Vallejo, CA 94591-1931 |

| Account # | Payment Due | Payment Late | Terms |
|---|---|---|---|
| 112-099001 | 12/15/14 | 1/1/15 | 10% late fee + 1% per month |

| Assessment Invoice is For | Amount |
|---|---|
| January Monthly Assessment - Thank You! | 1,879.85 |
| February Monthly Assessment - Thank You! | 1,879.85 |
| March Monthly Assessment - Thank You! | 1,879.85 |
| April Monthly Assessment - Thank You! | 1,879.85 |
| May Monthly Assessment - Thank You! | 1,879.85 |
| June Monthly Assessment - Thank You! | 1,879.85 |
| July Monthly Assessment - Thank You! | 1,879.85 |
| August Monthly Assessment - Thank You! | 1,879.85 |
| September Monthly Assessment - Thank You! | 1,879.85 |
| October Monthly Assessment - Thank You! | 1,879.85 |
| November Monthly Assessment - Thank You! | 1,879.85 |
| December Monthly Assessment - Thank You! | 1,879.85 |
| Account Credit | $0.00 |
| Balance Due | $22,558.20 |

## !!! IMPORTANT INFORMATION ABOUT LATE PAYMENTS !!!

It is very important for you to be aware that late payments are considered delinquent in respect to your CC&R section 6.6 & CA Civil Code 5650(b) .

Once delinquent, a written notice of delinquency called a "LATE PAYMENT DEMAND" is sent to all delinquent member accounts. 30 days after this notice of delinquency, any delinquent monthly assessment amount remaining causes your ENTIRE ANNUAL ASSESSMENT to become due and payable in its entirety per CC&R section 6.6.3 .

It is therefore very important that you provide full payment prior to the "Payment Late" date shown on this invoice to avoid the foregoing CC&R 6.6 enforcement activities from affecting your account.

Bayside Court Owners Association - PO Box 81 - Willits, CA 95490 - (707) 459-2287 - baysidecourt@yahoo.com

EXHIBIT G

# BCOA Late Payment Demand & Notice of Delinquency

| Member Account |
| --- |
| Sarah Jane Parker Arnett 099001<br>990 28th Street<br>Oakland, CA 94608 |

| Payment Instructions |
| --- |
| Write Your Account # on Check and Send Payment To:<br>Bayside Court Owners Association<br>First Bank<br>P.O. Box 15031<br>Vallejo, CA 94591-1931 |

| Account # | Demand Date | Amount Due |
| --- | --- | --- |
| 112-099001 | 1/2/15 | $196,256.71 |

| Date | Transaction | Amount | Balance |
| --- | --- | --- | --- |
| 09/29/12 | Balance forward | | 0.00 |
| 09/30/12 | INV #099001-1209. Due 09/30/12. | 9,791.90 | 9,791.90 |
| 09/30/12 | GENJRNL #FL. to adjust to actual at 9/30/12 | -4,268.11 | 5,523.79 |
| 10/01/12 | INV #099001-1210. Due 10/01/12. | 768.93 | 6,292.72 |
| 10/01/12 | GENJRNL #FLR. to adjust to actual at 9/30/12 | 4,268.11 | 10,560.83 |
| 10/16/12 | Due 10/16/12. Late Fee | 76.89 | 10,637.72 |
| 10/23/12 | PMT #221722883. | -1,000.00 | 9,637.72 |
| 10/31/12 | INV #FC 22. Due 10/31/12. Finance Charge | 97.52 | 9,735.24 |
| 11/01/12 | INV #099001-1211. Due 11/01/12. | 1,556.64 | 11,291.88 |
| 11/16/12 | Due 11/16/12. Late Fee | 156.65 | 11,448.53 |
| 11/30/12 | INV #FC 23. Due 11/30/12. Finance Charge | 111.55 | 11,560.08 |
| 12/01/12 | INV #099001-1212. Due 12/01/12. | 1,566.54 | 13,126.62 |
| 12/16/12 | Due 12/16/12. Late Fee | 156.65 | 13,283.27 |
| 12/31/12 | INV #FC 24. Due 12/31/12. Finance Charge | 133.99 | 13,417.26 |
| 01/01/13 | INV #099001-1301. Due 01/01/13. | 1,879.85 | 15,297.11 |
| 01/16/13 | Due 01/16/13. Late Fee | 187.98 | 15,485.09 |
| 01/24/13 | INV #Documents. Due 01/24/13. | 350.00 | 15,835.09 |
| 01/31/13 | INV #FC 25. Due 01/31/13. Finance Charge | 166.88 | 16,001.97 |
| 02/01/13 | INV #099001-1302. Due 01/15/13. | 1,879.85 | 17,881.82 |
| 02/04/13 | INV #AttorneyFee. Due 02/04/13. | 877.20 | 18,759.02 |
| 02/16/13 | Due 02/16/13. Late Fee | 187.98 | 18,947.00 |
| 02/28/13 | INV #FC 71. Due 02/28/13. Finance Charge | 172.26 | 19,119.26 |
| 03/01/13 | INV #0990011303b. Due 03/01/13. | 16,918.65 | 36,037.91 |
| 03/01/13 | INV #099001-1303. Due 03/01/13. | 1,879.85 | 37,917.76 |
| 03/02/13 | Due 03/02/13. Late Fee | 1,879.85 | 39,797.61 |

| 1-30 DAYS<br>PAST DUE | 31-60 DAYS<br>PAST DUE | 61-90 DAYS<br>PAST DUE | OVER 90 DAYS<br>PAST DUE |
| --- | --- | --- | --- |
| 22,558.20 | 3,337.61 | 3,404.09 | 162,928.18 |

## !!! IMPORTANT INFORMATION ABOUT LATE PAYMENTS !!!

It is very important for you to be aware that amounts shown on this notice are delinquent!

This CA Civil Code 5650(b) responsive notice of delinquency is sent to all delinquent member accounts. Delinquent monthly assessments not paid within 30 days after this notice of delinquency will cause your ENTIRE ANNUAL ASSESSMENT to become due and payable pursuant to CC&R section 6.6.3 .

CC&R 6.6.4 allows the BCOA to levy all costs of delinquent account collections against your member account. These costs can be very significant and can easily exceed the "amount due" shown on this document.

CC&R section 6.6.2 enables the Association to sell a member's property to the highest bidder in order to satisfy the lien present against it, pursuant to CC&R section 6.6.1.

It is therefore very important that you provide full payment to avoid the foregoing CC&R 6.6 enforcement activities from affecting your account and your Association property.

Bayside Court Owners Association - PO Box 81 - Willits, CA 95490 - (707) 459-2287 - baysidecourt@yahoo.com

Case: 14-44083   Doc# 72-1   Filed: 11/03/15   Entered: 11/03/15 19:19:30   Page 30 of 34

EXHIBIT H



# BCOA Late Payment Demand & Notice of Delinquency

| Member Account |
|---|
| Sarah Jane Parker Arnett 099001<br>990 28th Street<br>Oakland, CA 94608 |

| Payment Instructions |
|---|
| Write Your Account # on Check and Send Payment To:<br>Bayside Court Owners Association<br>First Bank<br>P.O. Box 15031<br>Vallejo, CA 94591-1931 |

| Account # | Demand Date | Amount Due |
|---|---|---|
| 112-099001 | 1/2/15 | $196,256.71 |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 03/12/13 | INV #LegalPrep. Due 03/12/13. | 1,075.00 | 40,872.61 |
| 03/18/13 | INV #FC 72. Due 03/18/13. Finance Charge | 123.03 | 40,995.64 |
| 03/31/13 | INV #FC 75. Due 03/31/13. Finance Charge | 170.62 | 41,166.26 |
| 05/02/13 | INV #FC 80. Due 05/02/13. Finance Charge | 433.12 | 41,599.38 |
| 06/04/13 | INV #FC 83. Due 06/04/13. Finance Charge | 451.35 | 42,050.73 |
| 07/01/13 | INV #0990011306V. Due 07/01/13. | 500.00 | 42,550.73 |
| 07/02/13 | INV #FC 86. Due 07/02/13. Finance Charge | 426.37 | 42,977.10 |
| 08/01/13 | INV #AttorneyFee. Due 08/01/13. | 4,378.91 | 47,356.01 |
| 08/01/13 | INV #0990011307V. Due 08/01/13. | 2,550.00 | 49,906.01 |
| 08/02/13 | Due 08/02/13. Late Fee | 280.00 | 50,186.01 |
| 08/02/13 | INV #FC 91. Due 08/02/13. Finance Charge | 470.59 | 50,656.60 |
| 08/14/13 | INV #AttorneyFee. Due 08/14/13. | 982.60 | 51,639.20 |
| 08/23/13 | INV #099001. Due 09/15/13. | 48,311.76 | 99,950.96 |
| 08/23/13 | PMT #002911056. JP Cruz settlement check | -16,106.75 | 83,844.21 |
| 09/01/13 | INV #0990011308V. Due 09/01/13. | 1,550.00 | 85,394.21 |
| 09/02/13 | INV #FC 95. Due 09/02/13. Finance Charge | 384.67 | 85,778.88 |
| 09/02/13 | Due 09/02/13. Late Fee | 255.00 | 86,033.88 |
| 09/03/13 | INV #AttorneyFee. Due 09/03/13. | 1,436.50 | 87,470.38 |
| 10/02/13 | INV #0990011309V. Due 10/02/13. | 1,500.00 | 88,970.38 |
| 10/02/13 | Due 10/02/13. Late Fee | 155.00 | 89,125.38 |
| 10/02/13 | INV #AttorneyFee. Due 10/02/13. | 284.50 | 89,409.88 |
| 10/02/13 | INV #FC 99. Due 10/01/13. Finance Charge | 726.27 | 90,136.15 |
| 11/02/13 | INV #FC 103. Due 11/02/13. Finance Charge | 901.36 | 91,037.51 |
| 11/02/13 | Due 11/02/13. Late Fee | 150.00 | 91,187.51 |
| 11/02/13 | INV #0990011310V. Due 11/02/13. | 1,550.00 | 92,737.51 |

| 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE |
|---|---|---|---|
| 22,558.20 | 3,337.61 | 3,404.09 | 162,928.18 |

## !!! IMPORTANT INFORMATION ABOUT LATE PAYMENTS !!!

It is very important for you to be aware that amounts shown on this notice are delinquent!

This CA Civil Code 5650(b) responsive notice of delinquency is sent to all delinquent member accounts. Delinquent monthly assessments not paid within 30 days after this notice of delinquency will cause your ENTIRE ANNUAL ASSESSMENT to become due and payable pursuant to CC&R section 6.6.3 .

CC&R 6.6.4 allows the BCOA to levy all costs of delinquent account collections against your member account. These costs can be very significant and can easily exceed the "amount due" shown on this document.

CC&R section 6.6.2 enables the Association to sell a member's property to the highest bidder in order to satisfy the lien present against it, pursuant to CC&R section 6.6.1.

It is therefore very important that you provide full payment to avoid the foregoing CC&R 6.6 enforcement activities from affecting your account and your Association property.

Bayside Court Owners Association - PO Box 81 - Willits, CA 95490 - (707) 459-2287 - baysidecourt@yahoo.com

# BCOA Late Payment Demand & Notice of Delinquency

| Member Account |
| --- |
| Sarah Jane Parker Arnett 099001<br>990 28th Street<br>Oakland, CA 94608 |

| Payment Instructions |
| --- |
| Write Your Account # on Check and Send Payment To:<br>Bayside Court Owners Association<br>First Bank<br>P.O. Box 15031<br>Vallejo, CA 94591-1931 |

| Account # | Demand Date | Amount Due |
| --- | --- | --- |
| 112-099001 | 1/2/15 | $196,256.71 |

| Date | Transaction | Amount | Balance |
| --- | --- | --- | --- |
| 11/02/13 | INV #AttorneyFee. Due 11/15/13. | 1,155.50 | 93,893.01 |
| 11/19/13 | PMT #888888. | -2,067.84 | 91,825.17 |
| 11/26/13 | INV #13112601Doc. Due 11/26/13. | 660.00 | 92,485.17 |
| 11/27/13 | PMT #888888. | -2,067.84 | 90,417.33 |
| 12/01/13 | INV #0990011311v. Due 12/01/13. | 500.00 | 90,917.33 |
| 12/02/13 | INV #FC 107. Due 12/02/13. Finance Charge | 911.82 | 91,829.15 |
| 12/02/13 | Due 12/02/13. Late Fee | 155.00 | 91,984.15 |
| 12/02/13 | INV #0990011311V. Due 12/02/13. | 1,500.00 | 93,484.15 |
| 12/21/13 | INV #099001-Coll. Due 12/21/13. | 982.57 | 94,466.72 |
| 01/01/14 | INV #099001-2014. Due 12/15/13. | 22,558.20 | 117,024.92 |
| 01/03/14 | INV #FC 110. Due 01/03/14. Finance Charge | 1,017.13 | 118,042.05 |
| 01/03/14 | Due 01/03/14. Late Fee | 2,521.82 | 120,563.87 |
| 01/03/14 | INV #0990011312V. Due 01/03/14. | 1,550.00 | 122,113.87 |
| 02/03/14 | INV #FC 115. Due 02/03/14. Finance Charge | 1,267.15 | 123,381.02 |
| 02/03/14 | Due 02/03/14. Late Fee | 155.00 | 123,536.02 |
| 02/03/14 | INV #0990011401v. Due 02/03/14. | 1,550.00 | 125,086.02 |
| 03/04/14 | INV #FC 117. Due 03/04/14. Finance Charge | 1,223.03 | 126,309.05 |
| 03/04/14 | Due 03/04/14. Late Fee | 155.00 | 126,464.05 |
| 03/04/14 | INV #0990011402v. Due 03/04/14. | 1,400.00 | 127,864.05 |
| 04/01/14 | INV #0990011403v. Due 04/01/14. | 2,000.00 | 129,864.05 |
| 04/02/14 | INV #FC 122. Due 04/02/14. Finance Charge | 1,249.52 | 131,113.57 |
| 04/02/14 | Due 04/02/14. Late Fee | 140.00 | 131,253.57 |
| 05/01/14 | INV #099001#F7.0. Due 05/01/14. | 75.00 | 131,328.57 |
| 05/02/14 | INV #0990011404v. Due 05/02/14. | 1,500.00 | 132,828.57 |
| 05/02/14 | INV #FC 123. Due 05/02/14. Finance Charge | 1,351.42 | 134,179.99 |

| 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE |
| --- | --- | --- | --- |
| 22,558.20 | 3,337.61 | 3,404.09 | 162,928.18 |

## !!! IMPORTANT INFORMATION ABOUT LATE PAYMENTS !!!

It is very important for you to be aware that amounts shown on this notice are delinquent!

This CA Civil Code 5650(b) responsive notice of delinquency is sent to all delinquent member accounts. Delinquent monthly assessments not paid within 30 days after this notice of delinquency will cause your ENTIRE ANNUAL ASSESSMENT to become due and payable pursuant to CC&R section 6.6.3 .

CC&R 6.6.4 allows the BCOA to levy all costs of delinquent account collections against your member account. These costs can be very significant and can easily exceed the "amount due" shown on this document.

CC&R section 6.6.2 enables the Association to sell a member's property to the highest bidder in order to satisfy the lien present against it, pursuant to CC&R section 6.6.1.

It is therefore very important that you provide full payment to avoid the foregoing CC&R 6.6 enforcement activities from affecting your account and your Association property.

Bayside Court Owners Association - PO Box 81 - Willits, CA 95490 - (707) 459-2287 - baysidecourt@yahoo.com

Case: 14-44083    Doc# 72-1    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 32 of 34

# BCOA Late Payment Demand & Notice of Delinquency

| Member Account |
|---|
| Sarah Jane Parker Arnett 099001<br>990 28th Street<br>Oakland, CA 94608 |

| Payment Instructions |
|---|
| Write Your Account # on Check and Send Payment To:<br>Bayside Court Owners Association<br>First Bank<br>P.O. Box 15031<br>Vallejo, CA 94591-1931 |

| Account # | Demand Date | Amount Due |
|---|---|---|
| 112-099001 | 1/2/15 | $196,256.71 |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 05/02/14 | Due 05/02/14. Late Fee | 200.00 | 134,379.99 |
| 06/01/14 | INV #0990011405V. Due 06/01/14. | 2,700.00 | 137,079.99 |
| 06/01/14 | INV #099001-F7.0. Due 06/01/14. | 75.00 | 137,154.99 |
| 06/02/14 | INV #FC 129. Due 06/02/14. Finance Charge | 1,413.12 | 138,568.11 |
| 06/02/14 | Due 06/02/14. Late Fee | 157.50 | 138,725.61 |
| 07/01/14 | INV #0990011406V. Due 07/01/14. | 1,500.00 | 140,225.61 |
| 07/01/14 | Due 08/02/14. Late Fee | 277.50 | 140,503.11 |
| 07/01/14 | INV #990Collect. Due 07/01/14. | 10,101.17 | 150,604.28 |
| 07/02/14 | INV #FC 137. Due 07/02/14. Finance Charge | 1,410.32 | 152,014.60 |
| 08/01/14 | INV #0990011407V. Due 08/01/14. | 1,550.00 | 153,564.60 |
| 08/02/14 | INV #FC 142. Due 08/02/14. Finance Charge | 1,590.02 | 155,154.62 |
| 08/02/14 | Due 08/02/14. Late Fee | 1,160.12 | 156,314.74 |
| 09/01/14 | INV #0990011408V. Due 09/01/14. | 1,550.00 | 157,864.74 |
| 09/02/14 | INV #FC 145. Due 09/02/14. Finance Charge | 1,636.68 | 159,501.42 |
| 09/02/14 | Due 09/02/14. Late Fee | 155.00 | 159,656.42 |
| 10/01/14 | INV #0990011409V. Due 10/01/14. | 1,500.00 | 161,156.42 |
| 10/02/14 | INV #FC 151. Due 10/02/14. Finance Charge | 1,616.76 | 162,773.18 |
| 10/02/14 | Due 10/02/14. Late Fee | 155.00 | 162,928.18 |
| 11/01/14 | INV #0990011410V. Due 11/01/14. | 1,550.00 | 164,478.18 |
| 11/02/14 | INV #FC 153. Due 11/02/14. Finance Charge | 1,704.09 | 166,182.27 |
| 11/02/14 | Due 11/02/14. Late Fee | 150.00 | 166,332.27 |
| 12/01/14 | INV #0990011411V. Due 12/01/14. | 1,500.00 | 167,832.27 |
| 12/02/14 | INV #FC 154. Due 12/02/14. Finance Charge | 1,682.61 | 169,514.88 |
| 12/02/14 | Due 12/02/14. Late Fee | 155.00 | 169,669.88 |
| 01/01/15 | INV #099001-2015. Due 01/01/15. | 22,558.20 | 192,228.08 |

| 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | |
|---|---|---|---|---|
| 22,558.20 | 3,337.61 | 3,404.09 | 162,928.18 | |

## !!! IMPORTANT INFORMATION ABOUT LATE PAYMENTS !!!

It is very important for you to be aware that amounts shown on this notice are delinquent!

This CA Civil Code 5650(b) responsive notice of delinquency is sent to all delinquent member accounts. Delinquent monthly assessments not paid within 30 days after this notice of delinquency will cause your ENTIRE ANNUAL ASSESSMENT to become due and payable pursuant to CC&R section 6.6.3 .

CC&R 6.6.4 allows the BCOA to levy all costs of delinquent account collections against your member account. These costs can be very significant and can easily exceed the "amount due" shown on this document.

CC&R section 6.6.2 enables the Association to sell a member's property to the highest bidder in order to satisfy the lien present against it, pursuant to CC&R section 6.6.1.

It is therefore very important that you provide full payment to avoid the foregoing CC&R 6.6 enforcement activities from affecting your account and your Association property.

Bayside Court Owners Association - PO Box 81 - Willits, CA 95490 - (707) 459-2287 - baysidecourt@yahoo.com

# BCOA Late Payment Demand & Notice of Delinquency

<table>
<tr><td colspan="3">

**Member Account**

Sarah Jane Parker Arnett 099001
990 28th Street
Oakland, CA 94608
</td><td>

**Payment Instructions**

Write Your Account # on Check and Send Payment To:
Bayside Court Owners Association
First Bank
P.O. Box 15031
Vallejo, CA 94591-1931
</td></tr>
</table>

| Account # | Demand Date | Amount Due |
|---|---|---|
| 112-099001 | 1/2/15 | $196,256.71 |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 01/02/15 | INV #FC 158. Due 01/02/15. Finance Charge | 1,772.81 | 194,000.89 |
| 01/02/15 | Due 01/02/15. Late Fee | 2,255.82 | 196,256.71 |
| 01/02/15 | Amount Due | | 196,256.71 |

| 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE |
|---|---|---|---|
| 22,558.20 | 3,337.61 | 3,404.09 | 162,928.18 |

## !!! IMPORTANT INFORMATION ABOUT LATE PAYMENTS !!!

It is very important for you to be aware that amounts shown on this notice are delinquent!

This CA Civil Code 5650(b) responsive notice of delinquency is sent to all delinquent member accounts. Delinquent monthly assessments not paid within 30 days after this notice of delinquency will cause your ENTIRE ANNUAL ASSESSMENT to become due and payable pursuant to CC&R section 6.6.3 .

CC&R 6.6.4 allows the BCOA to levy all costs of delinquent account collections against your member account. These costs can be very significant and can easily exceed the "amount due" shown on this document.

CC&R section 6.6.2 enables the Association to sell a member's property to the highest bidder in order to satisfy the lien present against it, pursuant to CC&R section 6.6.1.

It is therefore very important that you provide full payment to avoid the foregoing CC&R 6.6 enforcement activities from affecting your account and your Association property.

Bayside Court Owners Association - PO Box 81 - Willits, CA 95490 - (707) 459-2287 - baysidecourt@yahoo.com

Case: 14-44083    Doc# 72-1    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 34 of 34