## The Law Office of Andrew S. Cantor
4132 3rd St, Ste 7, San Francisco, CA 94124
phone: 415.817.1708; email: asc@cantor-law.com

BCOA Board of Directors  
958 28th Street  
Oakland, CA 94608

June 5th, 2015

**Re: Status Update**

Dear BCOA Board of Directors:

It has been my complete pleasure to be retained by the BCOA as its General Counsel. I have toured the Bayside property, and find it a real gem!

In short order, the BCOA has become my all-time favorite client. This is because the BCOA Board is well prepared, articulate, focused, flexible & creative in its approach to legal project work. It is highly responsive, knows what it wants, and unemotionally "all business" regarding the projects it undertakes with my office. I find that the counsel I provide is carefully considered, and that the Board proceeds in a manner which is clearly focused on serving the association membership's very best interest.

The liaison you have provided to interface with my office, Corporate Secretary Laurence Jennings, is one of the hardest working and most intelligent individuals I have ever professionally encountered. I really enjoy working with him and have learned a lot about problem-solving strategy and HOA law, as well as the realities of running a small HOA that is struggling to recover from over a decade of unfortunate mismanagement. Mr. Jennings is extremely careful and highly prudent in the work he does with my office, very cost conscious, and he makes consistently excellent business decisions at a speed I find truly inspirational.

Mr. Jennings has worked closely with my office on the resolution of the myriad of issues surrounding your Unit #990. Together with the assistance of Bankruptcy Counsel Scott Jordan whom I recommended join our team, we have developed a potent plan to help the BCOA recover from the long-term economic damage inflicted by 990's delinquent owner. Normally work of this magnitude can costs tens of thousands of dollars and require years to perfect. But Mr. Jennings has a unique talent for seeing great potential solutions where there seem to be none, and then fast tracking them into fruition at pennies on the dollar.

In regards to 990, this has resulted in the BCOA plan to lease the property to allow the BCOA to recoup reserves funding necessary for your Board to take care of its fiduciary duty of properly running your association. Revising your CC&Rs to authorize the leasing of delinquent & abandoned units in order to protect the membership from severe economic hardship, is nothing short of brilliant. Proceeding in this manner is clearly beneficial to the BCOA in my professional opinion. I have taken the time to put the legal instruments in place required to protect the BCOA from litigation, and have reviewed and approved the lease document, adding an addendum waiver of liability that must be duly signed to initiate the lease.

As an attorney, I cannot conceive of a better plan to protect your member's best interests in this unfortunate situation it has been saddled with. I very much look forward to assisting the BCOA throughout the leasing process, and other projects undertaken with my office.

Sincerely,

*[signature]*

Andrew S. Cantor

EXHIBIT AA

# BCOA Member Account Invoice

**Invoice #**
099001

| Member Account | Payment Instructions |
|---|---|
| Sarah Jane Parker Arnett 099001<br>990 28th Street<br>Oakland, CA 94608 | Write Your Account # on Check and Send Payment To:<br>Bayside Court Owners Association<br>First Bank<br>PO Box 15031<br>Vallejo, CA 94591-1931 |

| Account # | Payment Due | Payment Late | Terms |
|---|---|---|---|
| 112-099001 | 9/15/13 | 10/1/13 | 10% late fee + 1% per month |

| Assessment Invoice is For | Amount |
|---|---|
| Assessment underpayment for 2009:<br>(1566.04-686.22=879.82)x12=10,557.84 | 10,557.84 |
| Assessment underpayment for 2010:<br>(1566.04-331.65=1234.39)x12=14,812.68 | 14,812.68 |
| Assessment underpayment for 2011:<br>(1566.04-720.19=845.85)x12=10,150.20 | 10,150.20 |
| Assessment underpayment for 2012:<br>(1566.04-720.19=845.85)x10=8,458.50 | 8,458.50 |
| Recapture of unearned reimbursement of 2009 assessments | 4,332.54 |
| Account Credit | $-16,106.75 |
| Balance Due | $32,205.01 |

### !!! IMPORTANT INFORMATION ABOUT LATE PAYMENTS !!!

It is very important for you to be aware that late payments are considered delinquent in respect to your CC&R section 6.6 & CA Civil Code 1366(e).

Once delinquent, a written notice of delinquency called a "LATE PAYMENT DEMAND" is sent to all delinquent member accounts. 30 days after this notice of delinquency, any delinquent monthly assessment amount remaining causes your ENTIRE ANNUAL ASSESSMENT to become due and payable in its entirety per CC&R section 6.6.3.

It is therefore very important that you provide full payment prior to the "Payment Late" date shown on this invoice to avoid the foregoing CC&R 6.6 enforcement activities from affecting your account.

Bayside Court Owners Association - PO Box 81 - Willits, CA 95490 - (707) 459-2287 - baysidecourt@yahoo.com

Phone: 888 854-9444
Email: info@hoa-accounting.com

158 East 3rd Street, Pittsburg, CA 94565



# HOA
Accounting Services

January 19, 2012

Sarah-Jane Parker
990 28th Street
Oakland, CA 94608

    Re:    Bayside Court Owners Association
            Account 112-0990-01

Dear Ms. Parker,

We are in receipt of your letter dated December 27, 2011 requesting a payment plan.

We are pleased to advise that the board has approved a payment plan to cover the outstanding balance on your account. Beginning February 1, 2012, payment of your January and February assessments, totaling $1,226.00 needs to be received no later than February 15, 2012, and going forward, your monthly assessments must be kept current. Therefore, beginning February 1, 2012, in addition to your current monthly assessment, an additional monthly payment of $1,000.00 must be received no later than the last day of each month. Based on this payment schedule, the outstanding balance on your account should be paid in full no later than September 30, 2012.

During the course of this 8 month payment plan, you will NOT be charged any further late fees or interest. We have credited the January 2012 late fee on your account.

Please understand that if, for any reason, you default on this payment plan, your account will be sent directly to collection.

You will be receiving a monthly statement in the mail next week. Please disregard this statement. We have enclosed a corrected February statement and request that you remit your payment in accordance with the payment plan. Please be sure to have your account number, 112-0990-01 written on all of your checks that you mail to the First Bank P.O. Box in Vallejo.

We thank you for your cooperation and look forward to a successful completion of this payment plan. Please let us know if you have any questions.


HOA Accounting Services
On Behalf of the Bayside Court Owners Association


www.hoa-accounting.com

Case: 14-44083   Doc# 72-3   Filed: 11/03/15   Entered: 11/03/15 19:19:30   Page 3 of 16

EXHIBIT CC

# Marc Fong

**From:** Marc Fong
**Sent:** Monday, November 11, 2013 11:28 AM
**To:** 'John (J.R.) Richards'
**Subject:** RE: Arnette Suit

Not trying to delay the process, just trying to understand. Why are the balances pre August 2013, $51,639. 20? Why, if as you say there is, an additional $48,311.76 due as of August 23, 2013, which reflects underpayment for the years 2009-2012 not contained in the pre August 2013 running balances? If a portion of the assessments were delinquent in 2009, why aren't these amounts time barred? If the $48,311.76 is truly delinquent why weren't they included in your Notice of delinquent assessments filed this year? Again, I am just trying to understand what is going on so I can properly advise my client.

Again, I have offered to have a conversation with you concerning global resolution of this matter, but really need to understand how and what my client is responsible for.

Marc Alan Fong Esq.
Fong & Fong
A Professional Law Corporation
2161 Harbor Bay Parkway
Alameda, CA.94502

p. 510-748-6800 x107
f. 510-748-6822

Business-Real Property-Litigation-Employment-Alternative Dispute Resolution

www.fongmediation.net


**From:** John (J.R.) Richards [mailto:jrichards@richards-legal.com]
**Sent:** Monday, November 11, 2013 10:56 AM
**To:** Marc Fong
**Subject:** RE: Arnette Suit

OK, I have order to move forward on the non-judicial foreclosure on the liens. Also, your client continues to fail to pay assessments. My client will be in full steamroll process from here on out. I've tried to work with you, but evidently you're just trying to delay the process. You're client's place is huge and is approximately 12% of the annual budget of the HOA. They want her to pay or get out, basically.

JR

\\\
Richards Law
John (J.R.) Richards
4695 Chabot Drive, Suite 200
Pleasanton, CA 94588
Phone: 925-231-8104

Case: 14-44083    Doc# 72-3    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 4 of 16

EXHIBIT DD

# Marc Fong

**From:** Marc Fong
**Sent:** Monday, November 11, 2013 2:49 PM
**To:** 'John (J.R.) Richards'
**Subject:** RE: Arnette Suit

**Importance:** High


Could you please explain what you mean when you use the term "Assessment underpayment"? How does that differ, if at all, from a late assessment? Can you explain how the unit was under assessed? Was there a miscalculation? If so, when was my client advised of the miscalculation? When was the determination made that the unit was under assessed? The ledger shows an entry of 8/23/2013 where these under assessment were applied. Is that when it was determined that there was an assessment underpayment? If so, why was Cruz' payment allocated to these sums as opposed to those indicated in the notice of delinquent assessment?

I am sending these questions to you in good faith. My client acknowledges some potential responsibility for back due assessments. We are trying to see what she owes so we can make an informed decision as to what her exposure is.

Also, could you explain why Mr. Cruz' settlement with the HOA seems disproportionate to the amount demanded against my client? Both Cruz and my client were jointly and severally liable for past due assessments. If there isn't a good reason why this occurred, how will your client get around a discriminatory enforcement argument? Rest assured if your client wants to play hard ball, we can too. I suggest we both stand down from further chest beating and see if we can figure out what is owed and why? Burning up attorney's fees on both sides is counterproductive.

I want to assuage your concerns that my questions are designed for delay. I have a background in HOA law that goes back 34 + years. I served as Chair of the State Bar Subsection on Common Interest Developments, was a CEB Lecturer on HOA matters; and a consultant to "Advising California Common Interest Communities" Sproul and Rosenberry. My background in this arena informs me that my questions are neither impertinent nor designed for delay.


Marc Alan Fong Esq.
Fong & Fong
A Professional Law Corporation
2161 Harbor Bay Parkway
Alameda, CA.94502

p. 510-748-6800 x107
f. 510-748-6822

Business-Real Property-Litigation-Employment-Alternative Dispute Resolution

www.fongmediation.net


**From:** John (J.R.) Richards [mailto:jrichards@richards-legal.com]
**Sent:** Monday, November 11, 2013 1:46 PM

# BAYSIDE COURT OWNERS ASSOCIATION (BCOA)
P.O. Box 81, Willits, Ca. 95490 • (707) 459-2287 • baysidecourt@yahoo.com

**DOCUMENT#:** 13112201LJ

**DATE:** 11/22/2013

**TO:** JR@Richards Law

**FROM:** Laurence Jennings, Agent (Performing Extra Work On Unit 990 Collections)

**SUBJECT:** Fong 11/22/2013 Question Set #2 Response Report

Q1) The 3/2/2013 entry reflects a "Late Fee" in the amount of $1,879.85. That does not look right to me since it appears that the amount is the same as the monthly assessment. Am I right or wrong? Please explain?

A1) You are wrong. If you read the demand carefully, and follow the simple straight line math, you will see that the late fee of $1879.85 was added on 3/2/2013 for the two previous 3/1/2013 entries ("16,918.65" + "1,879.85"), that became late on 3/2/2013. The math: (16,918.65 + 1,879.85) x 0.1 = $1879.85 late fee as entered on 3/2/2013. [Please hire a bookkeeper for your future assistance requirements in such areas-this is far too expensive a forum for such neophyte questions.]

---

Q2) In December 2012 it appears that the monthly assessment was $1566.54. In January 2013 that amount appears to be stepped up to $1879.85. Is this an assessment increase? If so, can you provide me with board minutes reflecting the required increase?

A2) Yes this is obviously an assessment increase, and your client knows that because she was lettered on it many times, and it was covered in the 2012 Annual Disclosure required by the Civil Code-given to her on time. Your client has complete online access to all minutes, the annual disclosure, etc. Please do a modicum of your own research solely on your client's nickle counselor-this is far too expensive a forum for such neophyte questions.

Note: On 10/07/2012 the board duly agendized and motioned a 20% across the board regular assessment increase for all units-the legal maximum-which was passed unanimously. The requested minutes are attached as: "2012-10-07 BCOA BOD Approved Meeting Minutes.pdf". Item 11.0 of those minutes state:

"11.0 ASSESSMENT INCREASE: *It was MSC to adopt the assessment increase as agendized.*
The 2013 assessment schedule will be posted to the yahoo group files section for member access. It has increased association assessments by the 20% maximum amount allowed by law in order to fund the association's reserves-a requirement of state law that the BCOA has long failed to address adequately."

And here I will head off the next set of questions proactively: yes indeed, required civil code procedure were carefully followed, the draft minutes were published within 30 days of the meeting and formally approved by duly agendized board motion at the next regular meeting on 12/22/2012, the increase was disclosed in writing on time in strict accordance with all legal requirements, etc. You are not going to find any irregularities there-the i's are dotted and the t's are crossed-all of them. You will however find that Unit 990 is featured prominently in the attached minutes, and that much of the meeting was taken up with nuts and bolts issues of the association fervently seeking full financial solvency and legal compliancy with the governance documents and the law-just as we are doing here.

---

Q3) On 10/1/2012, there is an adjustment resulting in an apparent increase of $4,268 to Ms. Parker's Assessment liability. Could you please explain what that is for? To the extent that documentation exist for that increase could you please provide me with said documentation?

A3) Yes: On 01/01/2011 there was an (erroneous) account balance of -137.20. [This erroneous balance was created by your client pressuring the board/Citiscape management agent pair to illegally refund assessment $ allegedly already paid that represented supposed over assessment. This to the tune of $4,332.54 in 2010 (see attached file: BC Financial Report July 2010 28.pdf, your client's account # there is: BC0099028001), when indeed they were actually being significantly under assessed. Note that your client pulled this same stunt with the next board/Deibler management agent pair to the tune of over $1,311.91 in 2011 (see attached file: 190-Fin State-20111031-1 12.pdf). So as you can see counselor, your client is very fond of the concept of retro assessment adjustment-when it is in her favor, done clearly illegally, and wholly incorrectly in terms of CC&R 6.2.3. The BCOA position however is that such retro

adjustment must be done legally, correctly, and without board volunteers being pressured or unduly influenced. That is precisely what the BCOA has done here.]

From that 01/01/2011 day until 9/30/2012, we totaled every payment your client made and subtracted it from the regular assessment level that had been incorrectly established/published by Citiscape property management for that period which applied to all BCOA units, (before your client pressured for the improper decreases). This regular assessment ($768.93 for Unit 990), should have been billed 21 times in that period-and wasn't. It was not so billed because your client used her influence with her member friend on the board (who was also corporate president), to get her assessment illegally lowered to $613. No simultaneous decrease was applied to the other 32 BCOA units curiously enough. All this despite the fact that the Deibler management agent liaisoned accounting firm (HOA Accounting, Inc., then handing the BCOA books at this time), documented that the assessment needed to be raised from $720.19 to $768.93. [The correct figure as it turns out, was actually $1566.54-and we have so applied it now to that period.]

Even with the illegally lowered figure your client fell behind and HOA Accounting recommended collections to the board/Deibler management agent pair. Instead, a payment plan was entered into with your client outside of collections (see attached file: 112-0990-01 Parker Payment Plan 2.pdf), the terms of which were that if violated, your client's account would be immediately sent to collections. Your client violated the plan almost immediately-but the same board friend saw to it that she was not sent to collections. [Said friend has since been cited, a hearing held, and despite hiring an attorney to attempt to fight the BCOA-the BCOA responded without legal counsel (I handled the affair personally), and prevailed. The BCOA fined the member friend $500. for governance document violation issues. Said fine was promptly and quietly paid without comment-a wise decision your client might want to emulate.]

Because Unit 990 should have been sent to collections, and because their was so much malfeasance involved in the untoward manipulation of the assessment schedule-late payment penalties of 10% were applied to each month of carried balance, and balances aged beyond 30 days were charged the standard 12% rate of interest as permitted by CC&R 6.6.4. Total all that up, and you have the $4268.11 thus added 10/01/2012 to adjust her HOA Accounting documented 09/30/2012 balance of $5523.79 to a corrected $9791.90, (9791.90-5523.79=$4268.11 as the respective line item entry, not "$4268." as you incorrectly state).

The documentation you request which covers this period is attached, see attached file: Statement1_from_Sarah_Jane_Parker_Arnett2124.pdf

---

Q4) On 1/24/2013 there is a document charge for $350. What is that for?

A4) That is for the BCOA Accounting subcontractor's writing of collections letters as permitted by our governance documents, which you can go look up on your own with your client.. See attached invoice: Inv_Documents_from_Bayside_Court_Owners_Association_316.pdf

---

Q5) On 7/1/2013 there is an entry for $500. What is that for?

A5) That is a fine levied by the board for a violation of the BCOA governance documents CC&R 4.5. The fine is $50.00/day for every day the violation continues. This particular billing entry was for the period of 06/22/2013-07/01/2013, ie the last 10 days of June @ $50.00/day=$500.00. (Note: our simplified billing cycle is to bill on the first of every month).

Your client was notified of the hearing that generated this fine on 06/02/2013, but failed to respond or attend. Your client was notified of the need to cure the underlying issue creating this CC&R violation back on 10/02/2012-and failed to respond or do so in all that time. The disciplinary hearing from which this fine was generated was duly noticed to Unit 990's owners of record with >15 day minimum advance written notice as follows, (this is a verbatim cut and paste):

---

Dear Ms. Arnett & Mr. Cruz

As you know, members of our association (the BCOA) are subject to restrictions found in the BCOA's governing documents. These documents also describe the board's responsibilities. One such responsibility is the enforcement of the governing documents themselves, which include duly board adopted policies. Sometimes this requires the imposition of fines and penalties levied against those members who violate the association's restrictions. The BCOA board always regrets having to take such measures, preferring to minimize their negative impact whenever possible.

**This shall serve as notification that you have been cited as being in apparent violation of CC&R 4.5 "Rental or Leasing of Units".**

A disciplinary hearing on the matter noted above has been scheduled for June 22, 2013 at 12:15 pm, in the board

meeting room formally known as the Bayside Laundry Facility positioned inside Bayside Court located at 2828 Filbert St, in Oakland, CA. 94608. Upon written request received at the board's e-mail address (baysidecourt@yahoo.com) within 4 days of this notice's date as listed above, and for worthy cause, you may be granted a short continuance to a new hearing date. All hearing dates must be set upon weekends (Saturday or Sunday) between the hours of 12:00-6:00pm. No continuance of greater than 7 days will be accepted as it is in the best interest of all concerned to resolve this violation issue expediently. Members subject to disciplinary hearings may appear in person-or submit a written response that must be received no later than 2 days prior to the hearing schedule noted above.

*Please be advised that each discrete CC&R violation, if validated pursuant to the hearing being noticed to you here, can carry a one time or recurring fine level of up to $500 per violation, pursuant to the BCOA governance documents (especially CC&R 9.2) & board policy adopted at its regular and duly noticed public meetings. These fines can be made effective upon the date the hearing is ruled upon by the board. In addition to fines so levied, the board can also suspend member privileges for up to 30 days. All board rulings are final. Fines are billed to member accounts on the 1st of the month, and if unpaid for 30 days from the date first levied, will begin accruing interest at the rate of 1% per month.*

**This correspondence serves as the 15 day advance hearing notice required pursuant to the CC&R Bylaw 3.7.2.**

Please be advised that:

1) This hearing is for BCOA members only, and you my not be represented by an attorney.
2) The BCOA will not have its attorney present.
3) The BCOA digitally records all hearings in mp3 format for use in assisting its subsequent deliberations.

Please don't hesitate to contact us if you have any questions concerning the foregoing. Do note however that such questions or any clarification you may seek will not serve to alter the schedule of events set forth in this disciplinary hearing notice, in any manner whatsoever. Thank you for your very careful cooperation with this notice.

Regards,

-The BCOA Board of Directors

cc: BCOA Legal Counsel & Regular US Mail Service & Personal Delivery to Unit 990 by BCOA Director & President Raj Patel"

---

Note that your client remains in violation to this day and is being fined accordingly, pursuant to a duly motioned and board passed fine policy provided to her in compliance with the Civil Code. She has never responded in any way-though she gets monthly late payment reminders in the form of delinquency notices, (BCOA statements are called "Late Payment Demands" and are Civil Code compliant delinquency notices in and of themselves, by BCOA design). All of this detail is provided in a proactive attempt to head off any follow-on question sets, and their corresponding issue resolve delays, added costs, etc.

---

Q6) On 3/12/2013 there is a Legal Prep fee in the amount of $1075? What is that for and how is that different from Attorney Fees? Please provide documentation so I can understand what this is for.

A6) Yes there is. That is for the creation of a legal brief to supply to the BCOA attorney that would allow him to efficiently create the NOA and subsequent lawsuit documentation, without him having to work at his much higher hourly rate to produce the same information on his own, (by trolling through BCOA corporate records as you are evidently not doing). The hourly extra work rate involved (just $60./hr), is far below that which would have been billed out of Richard's Law for the effort involved. The BCOA really tries hard to hold down the costs of collection that subsequently get added to member liens and lawsuits for them to pay. The document you are reading here is a similar effort, also being extra work billed at $60./hr instead of Richards Law's rate, which again is many times that level. Ditto the first set of questions answered for you on 11/13/2013.

You may not have a copy of the brief written, it is privileged information-5 single spaced pages worth of wholly original text produced from many hours of careful research-with no quoted material, (as in this document). It is not an attorney fee-think of it as a paralegal's supporting research case work.

See attached file: Inv_LegalPrep_from_Bayside_Court_Owners_Association_316.pdf for the source of this account charge which is compliant with CC&R 6.6.4.

Q7) On 8/23/2013 there is an amount for $48,311.76. As I understand the HOA's position, this is for underpayment of assessment which were granted by a board who was not authorized to do so because of the CC&R's. Do I have that right? If so, could you please explain what that board did which was in violation of the governing documents? How did the HOA calculate the alleged underpayment?

A7) No, your phrasing is poor: it is for underpayment of assessment resulting from epically incorrect assessment levels set by incompetent management agents and their in-house or 3rd party accounting subcontractors, against advice the BCOA paid for and which was provided to said non BCOA entities by at least one attorney who reviewed the issue and issued a clear opinion in writing. That opinion was ignored because of pressure your client placed upon her board member neighbors. The boards involved never lawfully set any assessment schedule. My 2012 seated board was the first one to actually do so, and arrived at the same assessment schedule computation method the aforementioned attorney did, without being aware of said attorney's advisement at the time. The assessment computation methodology is extremely simple and is codified in CC&R 6.2.3, any uninfluenced 8th grader could run the correct math-it is not rocket science. Despite this, no one ever did run the correct math-and third party management agents conducted assessment invoicing of the entire membership without the requisite authorization to do so. That said, both the 2012 seated & acting 2013 seated BCOA boards have the assessment schedule correct, and have applied it in a legally compliant manner as detailed elsewhere in this response report.

Underpayment was calculated by using the correctly computed 2009-2012 assessment for Unit 990 ($1566.44), and applying it back as far as the statute of limitations allows-having first applied the Cruz settlement payment as already explained to you on 11/13/2013 (see attached file: Inv_099001_from_Bayside_Court_Owners_Association_2928.pdf), then subtracting the payments your client actually made. (Note that these were insufficient to cover even the under billed assessments!) Interest has not yet been applied for the pre 08/23/2013 period-but should be, as the money was due and earned-and clearly your client has never had any intention of paying what the CC&Rs she is bound to, require.

I am not going to explain/belabor to you "what that board did which was in violation of the governing documents?", that is an immaterial waste of time here. The board/management agent pairs pre 11/2012 failed to follow the CC&R 6.2.3 assessment calculation methodology-which is a governance document direct violation accordingly. CC&R 6.2.3 says that assessments are calculated by dividing the annual BCOA budget by the total BCOA member unit square footage, to obtain an annual BCOA cost per unit sq ft...then dividing that result by 12 to get a monthly BCOA cost per square ft... then multiplying that figure by each respective unit's square footage inclusive of all lofts and mezzanines....to yield a correct assessment level. Very simple.

I will however explain to you that what the BCOA is seeking from your client is the correct and lawful assessment she never paid, the fines/interest she never paid, and all the costs of collecting these funds. If she fails to do this in good faith here-the BCOA will play ultimate hardball without pause.

You and/or your client have our governance documents and online access to all of the minutes necessary to research these niggling details-you can therefore understand how it all works from doing your own research. My job is not to edify you counselor-my job is to collect the debt owed by your client. We are not going to play billable hours with you on this any further. We have been entirely reasonable and highly responsive-your client has not. That's the size of things.

Q8) There are a number of entries for attorney's fees. In order to determine if the fees were reasonable I would like to see what the billing detail reflects to make an assessment as to their reasonableness.

A8) Inquiry refused as unreasonable. This will be taken up with the court when we prevail as "reasonableness" is very much for the court to judge then-not you here counselor. You are wasting the BCOA's time here and you will not be accommodated. I can assure you the fees are very reasonable indeed-whereas this question is not. As stated, we are not playing the billable hours game counselor. Your client is a deadbeat debtor that has utterly underperformed in respect to her responsibilities and schemed to avoid paying her lawful assessments. This act has placed the association at great risk. The BCOA will not respond to any more of your communications that are not pleadings or real settlement offers. Many of the documents attached here have already been provided to your client-you should be seeking this material from her in your own personal discovery work-not motoring us to do her work for you. Your client has a debt, we are going to pursue its collection, and we are finished playing Q & A with you.

-end of response report-

JR, you are directed to ignore all further Fong communication that is not a pleading or settlement offer. Mr. Fong is clearly wasting our time with this pre discovery charade. Yes, this will all come out in discovery-so let us move to that phase so that he can start really billing his client the true cost of this "work". As it is, the lawful monies due the BCOA are just going to line Mr. Fong's pockets-which is just outrageous. This is not serving anyone at the BCOA. Enough already. No mas!

Please add a billing of $660. for 11.0 hours of extra work at the rate of $60./hr for the research and generation of this submittal, to the collections costs sought from Unit 990. I note that no payment plan was provided by the end of the last week as Mr. Fong suggested would be the case. Typical non follow thru from Unit 990-her file is full of this M.O.. The 7 day grace period offered for the payment made this past week expires on 11/26/2013. In addition, no key access to the water valve was forthcoming. The BCOA now proceeds with prejudice accordingly. Without further payment on account of $2067.84 for December, this grace period is not to be extended.

Agreements have to be honored JR-or good faith expires very quickly. Unit 990 has a long history of stalling and not delivering-such will not be accommodated here or in the future. You have your directive.

Thank you for carefully respecting this directive, which you are free to copy to Mr. Fong in its entirety.

I do like things to be crystal clear and to the point.

-Laurence, Agent

# Marc Fong

**From:** Robert E. Capron [bob@CAPRONLAWOFFICES.COM]
**Sent:** Friday, February 21, 2014 4:56 PM
**To:** Bayside Court Board of Directors
**Cc:** Robert Alan Martin; Scott S Sorensen; Tarmanhomes@sbcglobal.net
**Subject:** RE: Bayside Court Condominium Association

Dear Mr. Jennings:

Your email reply is distressing to me and my clients. I say this because all in the world my clients want is to have their escrow close so they can become cooperative and contributing members of the association, be able to keep the Unit 990 contributions to the association current and solve the water valve access issue which has apparently been a problem for the association for some time.

My clients would very much prefer to get on with their lives as members of the association and not engage in arguments, threats, code citations and litigation. Given half a chance, my clients want to be able to avoid having to spend a very considerable amount of time and money writing briefs and making court appearances. Clearly, however, my clients cannot do it all by themselves - they need your cooperation. As I see it, my clients and I are simply requesting and expect you to give us your cooperation in removing the problems and issues raised by your reply to my email yesterday.

Those problems and problematic issues raised by your email reply to me of 7:19 yesterday evening include the following:

1. ==Unlicensed Practice of the Law.== I checked with the State Bar Association and you do not appear to be licensed in California as an attorney. Yet your reply to me is filled with a number of legal assertions - and many of them are just flat wrong. By way of non exclusive example --

   a. You say "Unit 990 is not paying, so the BCOA is not playing"

   But nothing in the Davis Sterling Act permits an association, or one who purports to represent it, to exempt the association from the requirements of the Davis Stirling Law whenever the association or its representative thinks that the unit which is the focus of the exchange is allegedly "not paying."

   b. You say that I "do not need Mr. Richard's "consent" to speak with" you.

   Once again, your legal opinion is just flat wrong, and you would know it if you were an attorney. It is a basic rule of professional ethics that a lawyer like myself cannot talk to the client (you) of opposing counsel (Mr. Richards) without the prior consent of that opposing counsel (Mr. Richards).

   c. You say that it is untrue that you instructed Mr. Richards not to talk to me.

   This statement of yours is untrue. Mr. Richards told me you instructed him not to talk with me (you can check with him to confirm, if you are so inclined). And, as a matter of fact, later in your own email reply to you yourself contradict this assertion of yours and acknowledge that the association's lawyer has been instructed not to talk to me.

   d. You say I have issued a section 1368 complaint.

   This is wrong on several fronts.

   First, section 1368 of the Civil Code was repealed the first of this year.

1

Second, my request was not a complaint – it was a request for information.

And third, under Civil Code section 4530(b)(2), the association is required to provide me with the form prescribed by section 4528, which is an estimate of the fees which the association will charge for providing me with the documents I have requested. Please note that this section 4528 is due "upon receipt" of the request by the Association and that the fees must be "reasonable." Please send me this completed form NOW, before you do any further work on my request, so I can authorize you to proceed and thereby knowingly incur the costs of paying your association's fees, once I know what they are and am able to determine for myself that they are reasonable.

e. You say that the association has no duty to provide me the documents specified in section 4525(a)(4) because that section requires the owner of the unit in question to provide that information.

But once again you are wrong. Section 4530(a)(1) obligates the association to provide the information set out in section 4525 to anyone "authorized by the
owner . . . ," and that includes me!

f. You say that my "unauthorized contact to Mr. Richards last week has cost the association $83.84 to date" which amount you have demanded that I pay.

I flatly refuse to pay any such fee, and I categorically reject this baseless and silly demand of yours. You have no authority whatsoever to charge me any fee for talking to your association's attorney about a law suit which he has filed at your request for your association and which directly affects my clients' pending contract to buy Unit 990.

2. <mark>Interference with Contract</mark>. I regard your conduct so far in this matter as designed to intentionally interfere with and frustrate the contract my clients have with the owner of Unit 990 to buy that unit. I say this for several reasons, including the following:

    a. I am an attorney and I have told you I represent the persons who have signed a contract to buy Unit 990 and I have given you my clients' names (which you knew already). You have refused to accept this representation of mine and have asserted that you will not recognize my clients as buyers under their contract to purchase Unit 990 until the escrow company confirms that they are indeed my clients.

    This is another silly and baseless rule you have just made up -- escrow companies are not in the business of verifying an attorney's written statement concerning his representation of specific clients. You are just making it more difficult for my clients to buy Unit 990; in fact, you are frustrating my clients' ability to perform their contract to buy Unit 990. That is wrongful, that is unlawful, and it is a tort for which you and the association can both be held personally liable for my clients' resulting losses. And those losses can be substantial – this transaction has considerable monetary value to my clients. You are blocking my clients' attempt to honor and perform and benefit from their contract to buy Unit 990. If you are successful and that contract to buy Unit 990 fails, my clients will most definitely start proceedings against you and the association to recover their losses. Before you continue your wrongful conduct, therefore, I urge you to consult with your legal advisers and then begin to cooperate with my clients and me so we can avoid litigation and of us – the association, its members, my clients and the seller of Unit 990 -- can all benefit from the sale of Unit 990 to my clients.

2

b. You have caused a complaint to be filed against my clients' seller and that complaint seeks some $40,000 which is not in any way identified as to how it was caused, what it is for or how it was calculated. The complaint does not say why that sum is allegedly owed, how it arose or was caused, or whether it is a sum enforceable against title to Unit 990.

I called your attorney to find out the basis for this additional sum of roughly $40,000, and you have blocked me from discovering what that basis is. I have asked you to tell me the nature of this unsupported charge, and you have wrongfully refused to tell me. My clients cannot buy Unit 990 without knowing what all the charges against it are and how they arose. Your withholding this information from me is wrongfully blocking my clients' efforts to buy Unit 990. If you continue on this course, my clients' contract to buy Unit 990 will fail and they will hold you and the association personally responsible.

c. You have requested that Unit 990 give the association a water valve easement, yet you have refused to tell me anything about that easement – where it is to be located, what access rights it is to create, whether it is assignable in whole or in part, what kinds of conduct are permitted on the easement, whether the easement is personal, in gross or appurtenant, *etc., etc., etc.*

You have refused to give me any of this information about the easement, and yet my clients have a clear right to have this information now and be able to read the actual easement itself before their escrow closes. By intentionally withholding this information from my clients and me, you are wrongfully blocking the close of my clients' escrow and you are tortuously interfering with my clients' contract to purchase Unit 990. Your action in this regard is wrongful and, once again, if it succeeds in blocking my clients' escrow, my clients will hold you and the association liable for their resulting losses.

I could go on, but in the interests of brevity (rather than completeness), I will stop for now and return to the cooperative thoughts and desires which I mentioned at the outset of this email and which are driving my clients and me. Specifically,

a. I respectfully request that you give me now the completed form specified in Civil Code sections 4530(b)(2) and 4528 and wait before you begin to assemble the information I have requested until you receive my further instructions concerning your providing me with that information;

b. I respectfully ask that you give me a copy of the easement the association is demanding from Unit 990; and finally,

c. I respectfully ask that you begin to cooperate with my clients and me so we can get the pending escrow closed and the association can receive from Unit 990 the kind of payments and support which you say has been lacking for some time.

If we can restart this process, I know we all can avoid the expenditure of considerable costs and time which will necessarily be involved in any formal conflict between you and the association on the one hand, and my clients and me on the other. I know with just a modicum of good will on each side, we can avoid litigation loss and create positive gain for everyone. I want to conclude by saying that all my clients' want is to buy Unit 990 and thereby be able to become solid, contributing members of the association. Please join us in this effort.

Best regards,

Robert E. Capron

3

Robert E. Capron
Law Offices of Robert E. Capron
214 Grant Avenue, Suite 400
San Francisco, CA 94108
Tel: 415-781-3355
Fax: 415-986-1730
=================================================
THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL.
IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR THE ENTITY NAMED ABOVE. IF THE
READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY
DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU
HAVE RECEIVED THIS COMMUNICATION BY ERROR, PLEASE NOTIFY AND RETURN THE ORIGINAL MESSAGE
TO THE SENDER. THANK YOU.
=================================================

-----Original Message-----
From: Bayside Court Board of Directors [mailto:baysidecourt@yahoo.com]
Sent: Thursday, February 20, 2014 7:19 PM
To: Robert E. Capron
Cc: Robert Alan Martin; Scott S Sorensen; Tarmanhomes@sbcglobal.net
Subject: Re: Bayside Court Condominium Association

Dear Mr. Capron,

I understand your representation as noted, but please be advised I do not in fact know
that BCOA Unit 990 is under contract to your clients. I know only from an escrow company
that the unit is in escrow, as per their advisement of 01/29/2014.

Please be advised that I have not instructed Mr. Richards "not to talk to you", rather
Mr. Richards is following BCOA protocol designed to minimize unnecessary legal expenses
to the association. Accordingly, you have been directed to me for your information
requests, as Mr. Richard's is not authorized to provide same at our expense. We are a non
profit mutual benefit corporation-money matters, please be sensitive to that moving
forward. Thank you for your consideration accordingly.

Note: you do not need Mr.Richard's "consent" to speak with me-Mr. Richards works for us,
not the other way around. If you would prefer to speak with Mr. Richard's at any time, as
opposed to me, you may-as long as you consent to pay his billings for said speak. Your
unauthorized contact to Mr. Richards last week has cost the association $83.84 to date.
I would appreciate it if you would have a check issued to the BCOA in that amount before
we continue working together in any capacity-we do need to very carefully cover operating
costs-the BCOA board requires that in the interest of its 33 members. Please promptly
mail the check to: BCOA, P.O. Box 81, Willits Ca 95490. Thank you for your consideration.

In order to be recognized as representing parties in escrow, I would need confirmation
from the escrow officer who contacted us, with whom I am familiar and have a very good
working relationship. Please promptly have that provided to me before contacting me in
the future in regards to Unit 990. Thank you.

Meanwhile, your questions are best answered by contacting the seller of Unit 990's
attorney, Mr. Fong:

Marc Alan Fong Esq.
2161 Harbor Bay Parkway
Alameda, CA. 94502

510-748-6800 x107
510-748-6822

Fongmediation.net

4

MFong@fonglaw.com

Mr. Fong is in possession of most everything you need (and then some), as we have already been through most of the issues you address with him at rather significant BCOA expense, (thousands of dollars to date). Whatever he is unable to provide you with, which we have not already provided to him, I can assist you with accordingly. Please be advised that the service rate for items not otherwise controlled/mandated by the civil code is a very reasonable $60./hr, and we work quite efficiently under that rate, as evidenced here. This response is not being billed for, as a courtesy, but future service requests will be. Please be carefully aware of that. Thank you.

Please understand that the BCOA is not trying to be uncooperative, but rather, simply limit the extraordinary amount of time and expense Unit 990 (a unit that has never paid its lawful assessments and is in a state of extreme delinquency with both the BCOA and the Alameda County Tax Assessor, amongst potential others), is taking up of BCOA volunteer governance and paid management. In short: Unit 990 is not paying, so the BCOA is not playing. It simply can not afford to do so unfortunately.

As for civil code requirements, I suggest you have issued a 1368 compliant demand and advise us of who to bill for same. As soon as payment is received, we will process this request and issue it within the civil code's requirements. You have cited CIV 4525(4). As I am quite sure you are aware, that applies to owners of a separate interest, not the BCOA. I have thus directed you to the seller's legal representative, who is rather experienced at fulfilling such requirements of the law.

If billed for, this would have required 1 hour to prepare and file, the charge thus waived is $60.00.

Regards,

-Laurence Jennings, Agent

================================================================================

Dear Mr. Jennings:

I represent Messrs. Scott S. Sorensen and Robert Alan Martin who, as you know, are under contract to buy Unit 990 in the Bayside Condominium Development from its owner, Ms. Sarah Jane Parker Arnett. I am very interested in assisting my clients finish their acquisition of Unit 990 and therefore need some answers to several important questions. The Association's lawyer, Mr. John Richards, told me yesterday afternoon that you have instructed him not to talk to me and that, instead, I should talk to you directly. Mr. Richards, gave me his consent to my talking to you.

Here are my questions:

    1. The second amended complaint the association has filed in the pending Alameda Superior Court as Action RG13683940 alleges that Unit 1990 is encumbered with two delinquent assessments, one in the amount of $17,881.82 (complaint paragraph 12) and the other for $22,236.62 (complaint paragraph 14), but the prayer is for some $83,844.21. What is the basis for the association seeking to collect the difference between the total of paragraphs 12 and 14 and the total damages of $83,844.21 which the complaint seeks to recover? This difference amounts to $43,725.77? What is the basis for the association claiming this sum as due from the present owner of Unit 990?

    2. The complaint in its present form does not seek to foreclose any lien. Has the association begun proceedings of any kind, whether power of sale proceedings or judicial foreclosure proceedings, or other proceedings to collect any sums by foreclosing on Unit 990? If so, please let me know what those proceedings are and when and how they were commenced.

3. Please let me know whether any of the sums you are seeking in the complaint referenced in paragraph 1 above are charges against the title to Unit 990 or whether they are just personal obligations of Sarah Jane Parker Arnett, the defendant named in paragraph 1 of the complaint.

4. Please give me a list of each debt or financial obligation which, in your opinion, represents the Association's valid charge or lien against title to Unit 990. I am making this request pursuant to the Davis-Stirling Act, Civil Code, section 4525(4).

5. Please provide me with a copy of the recently revised CC&Rs which are the subject of your February 18, 2014 email to Ms. Sarah Jane Parker.

6. Please tell me what the basis is for the $25,000 administrative charge which you say in your above referenced email of February 18, 2104 is to be charged to Unit 990. Why is this charge being levied and what has Unit 990 received in exchange for paying this charge?

7. Are there any charges against Unit 990 other than those referenced above? If so, please let me know what they total and what the basis for each is.

8. With regard to the water valve access easement you discussed in your above referenced February18 email, where exactly is this easement located, has the easement been drafted yet, has the easement been recorded yet and what is the Association paying Unit 990 for the right to impose this easement? If the easement has been drafted, please send me a copy.

9. Finally, I would very much appreciate having a copy of the minutes of all board and member meetings which have been held between November 1, 2013 and today's date.

As you know, my clients are under contract to purchase Unit 990 and need this information in order to satisfy contract conditions, complete their escrow and become the owners of Unit 990 and contributory members of the Association.

Thank you for your prompt reply to this email inquiry.

Bob Capron

Robert E. Capron

Law Offices of Robert E. Capron

214 Grant Avenue, Suite 400

San Francisco, CA 94108

Tel: 415-781-3355

Fax: 415-986-1730

================================================

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR THE ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION BY ERROR, PLEASE NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

================================================================