Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**From:** Robert E. Capron [mailto:bob@CAPRONLAWOFFICES.COM]
**Sent:** Tuesday, May 27, 2014 12:26 PM
**To:** 'Scott Sorensen'; 'Robert Martin'; 'Kent Tarman'; Marc Fong
**Subject:** FW: Davis-Stirling request for Information -- Unit 990, Bayside

Dear Scott, Robert, Kent and Marc:

   I just sent the following email to the board to reply to the board's (read, Jennings') denial this morning of the request for information I sent to the board last Wednesday. I am building a case against Jennings and the board for intentional interference with contract in the hope that, as we get closer to July 4, we will have put enough pressure on him to cause him to withdraw his unlawful liens and negotiate with us an acceptable water valve easement and contract limiting the unit 990 assessments.

   _**Marc, I left yu a phone message this morning asking you to have Sarah Jane send the Board an email saying, in effect, that in making the requests I have of the Board, I am authorized by her to seek the information I am requesting. I do not want Jennings to deny my request on the basis that I have not been so designated – see Civil Code section 4530(a)(1) which says any person authorized by an owner can obtain the information described in section 4525.**_

   I will continue to keep you all informed.

         Bob

Robert E. Capron
Law Offices of Robert E. Capron
214 Grant Avenue, Suite 400
San Francisco, CA 94108
Tel: 415-781-3355
Fax: 415-986-1730
===============================================
THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR THE ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION BY ERROR, PLEASE NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

**From:** Robert E. Capron
**Sent:** Tuesday, May 27, 2014 12:18 PM
**To:** 'Bayside Court Board of Directors'
**Cc:** 'Bayside Court Board of Directors'
**Subject:** FW: Davis-Stirling request for Information -- Unit 990, Bayside

To:  The Board of Directors, Bayside Court Owners' Association

     I have just received and read your reply of five hours ago to my request for information which I sent you last Wednesday, May 21, 2014 -- almost a week ago. You have not answered any of the questions I have asked, not a single one. Nor have you provided me with any statement concerning the fees you are authorized to charge under the Davis Stirling Act for providing me with the information I have requested. As justification for your decision to totally ignore my requests, you claim you have no present duty to give me any of the information I have requested because, you claim

     a. my clients' financing is not been "fully secured," and

     b. some of the information I am seeking is not "legally mandated."

Neither of these claims of yours is valid; and neither justifies your refusal to give me any of the information I have requested under the Davis Stirling Act. I say this for the following reasons.

    1. <u>There is no requirement under the Davis Stirling Act that a purchaser under an existing contract to buy a condominium unit in a condominium project has no right to get the information provided for under Civil Code Section 4530(a)(1) and 4525(a)(4) prior to the time that purchaser's financing has been "fully secured."</u>

The information I asked you last Wednesday to give me is expressly provided for in Civil Code Section 4525(a)(4) and Civil Code section 4530(a)(1) says I have the right to get it. <u>Please note that nowhere in these sections, or anywhere else in the Davis Stirling Act, is there any requirement that says I cannot get this information until financing is "fully secured."</u>

And if you think about it for just a moment, if such a requirement ever existed, the vast bulk of information requests under Davis Stirling could be rejected and our housing marked would come to a screeching halt. This is so because, in almost every purchase of residential real property in California, the purchase is financed by new loans and the lenders of such new loans condition their lending commitment on receiving, prior to funding, exactly the kind of information which I am asking you to give me. And such lenders will not fund their loans until they get the kind of information I have asked you to give me. <u>So if there were a rule which justified an association's withholding of information like what I have requested in this case, such a rule would prevent the close of escrows in the vast bulk of condo purchases in California!</u>

It is therefore obvious that your "no information until you loan is fully secured" reason for not giving me the information I have requested is just a silly rule you have made up, and that by using it you are putting yourselves in violation of the Davis Stirling Act. The truth is that you have the obligation, under the Davis Stirling Act, to give me the information I have requested even though, in your view, our financing is not currently "fully secured."

Your "fully secured" reason for not giving me the information I have requested is not in any way supported by the Davis Sterling Act. Your using this "fully secured" objection as a ground to deny my request for the information I have requested is a violation of the Davis Stirling Act. Please do not do this – please comply with the Davis Stirling Act and provide me with the information I have requested. And please do it within the time frames set forth in the Davis Stirling Act.

    2. <u>All of the information I have requested is "legally mandated."</u>

You have told me you will not provided me with all of the information I have requested because, you say, some part of my request, which you do not identify, is not information you are "legally mandated' to give me. Once again, you are incorrect. Please take the time to read Civil Code Section 4525(a)(4). This section says that you are required to give me:

    "A true statement in writing obtained from any authorized representative of the association as to the amount of the association's current regular and special assessments and fees, any assessments levied upon the owner's interest in the common interest development that are unpaid on the date of the statement, and any monetary fines or penalties levied upon the owner's interest and unpaid on the date of the statement. The statement obtained from an authorized representative shall also include true information on late charges, interest, and costs of collection which, as of the date of the statement, are or may be made a lien upon the owner's interest in a common interest development pursuant to Article 2 (commencing with Section 5650) of Chapter 8."

All of the information I have requested falls squarely within the scope of this above quoted section 4525(a)(4). I therefore ask you again – please comply with the Davis

3

Stirling Act and give me the information I have requested. And please do it within the time frames set forth in the Davis Stirling Act.

I want to conclude with an explanation. You will sense a tone of urgency in this repeated request. That urgency is because my clients have basically only the month of June within which to secure the information they need to close their purchase of Unit 990 and the information I have requested is essential to that closure. If I do not get the information I have requested, I am afraid my clients will not be able to close escrow, which would mean that they would lose their present contractual right to purchase Unit 990 and become solid, assessment paying, water valve problem solving members of your association. For a host of reasons, therefore, it is in your and my clients' best interests for you to comply with the requirements of the Davis Stirling Act and give me the information I requested last Wednesday and do it in a timely fashion that complies with the requirements of the Davis Stirling Act.

Thank you,

Robert E. Capron


Robert E. Capron
Law Offices of Robert E. Capron
214 Grant Avenue, Suite 400
San Francisco, CA 94108
Tel: 415-781-3355
Fax: 415-986-1730
==================================================
THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR THE ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION BY ERROR, PLEASE NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.
==================================================
-----Original Message-----
From: Bayside Court Board of Directors [mailto:baysidecourt@yahoo.com]
Sent: Tuesday, May 27, 2014 7:08 AM
To: Robert E. Capron
Subject: Re: Davis-Stirling request for Information -- Unit 990, Bayside

Dear Mr. Capron,

Congratulations!

That is excellent news.

As noted to you in our May 15 e-mail on the subject:

"Please resubmit any non personalized requests for non legally mandated assistance AFTER your client's financing
for the the purchase has been fully secured-clearly advising us of same."

We have yet to receive that advisement, and have been informed that the junior lender has not yet settled which remains an impediment to escrow closure. Ms. Caldwell-Meurer is not a source of information we can rely upon, as she has made a variety of public statements of alleged fact that we have found incorrect and worrisome at best. One of which was that the junior lender had already been settled with long ago. Moving forward, please know that we are fine with being duly advised in regards to this sort of thing by yourself as an attorney at law and esteemed steward of the court. We like things simple.

Legally mandated information disclosure pursuant to the Civil Code will of course be provided in full conformance with the law.

Please divide your subsequent data requests into two sections, (separate e-mails respectively would be really helpful as well):

Section A: legally mandated document requests per Article 2

Section B: all other data requests

This is important for internal tracking, execution, and invoicing as the requisite timelines (etc) can be very different.

We look forward to assisting you efficiently with the reasonable fulfillment of your client's needs up to escrow closure, and well beyond as new BCOA members. Note: our next regular board meeting is Sunday, June 15, 2014 @ 12:00pm.

Regards,

-The BCOA Board of Directors

--------------------------------------------
On Wed, 5/21/14, Robert E. Capron <bob@CAPRONLAWOFFICES.COM> wrote:

  Subject: Davis-Stirling request for Information -- Unit 990, Bayside
  To: "'Bayside Court Board of Directors'" <baysidecourt@yahoo.com>
  Cc: "'baysidecourt@yahoo.com'" <baysidecourt@yahoo.com>
  Date: Wednesday, May 21, 2014, 4:55 PM

To:  Board of Directors, Bayside Court Owners' Association

I represent Messrs Scott Sorensen and Robert Martin who have entered into a contract with Ms. Sarah Jane Parker to purchase Unit 990, which is a condominium unit in the Bayside Court Condominium Project.

My clients have just learned that the short sale they have been working on for the last several months has been approved by the holder of the first trust deed which presently encumbers Unit 990. This lender's commitment is valid until July 3, 2014. Please feel free to confirm these representations with broker Maureen Caldwell-Meurer, whose email address is Maureen Caldwell-Meurer [maureen@maureensrealty.net]

In order to proceed with the close of escrow, my clients need certain information which I will be requesting from you from time to time over the next several weeks. At the present time, my clients need the following detailed information to close their escrow.  I am requesting that you send to me your responses to this inquiry at your earliest convenience and no later than is permitted by the applicable provisions of the Davis Stirling Act (California Civil Code sections 4000 and following, especially section 4530(a)(3)):

1.  Please provide me with the following information for each of the following items which are secured by the lien recorded on March 11, 2013, securing the then amount of $18,759.02:

(a).  The amount of each monthly assessment allegedly in default as of March 11, 2013:

(b)  The month and year for which each such delinquent assessment was assessed against Unit 990;

(c)  With regard to each such delinquent assessment described in item 1(a) above, please state the amount of interest charged on each such delinquent assessment;

(d).  With regard to each late charge imposed on account of each such delinquent assessment described in item 1(a) above, please state

i.    The amount of each such late charge;

ii.   The date each such late charge was imposed on the owner of Unit 990;

iii.  The amount of interest which was charged with regard to each such late charge;

(e)   With regard to each penalty which has been imposed on the owner of Unit 990 and is secured by the lien referenced in item 1 above, please state

i.    The amount of each such penalty;

ii.   The reason each such penalty was imposed on the owner of Unit 990;

iii.  The date each such penalty was imposed on the owner of Unit 990; and

iv.   The amount of interest which was charged with regard to each such penalty and which is secured by the lien referenced in item 1 above;

(f).  With regard to each fine (other than a penalty referenced in item 1(e) above) which has been imposed on the owner of Unit 990 and is secured by the lien referenced in item 1 above, please state:

i.    The amount of each such fine;

ii.   The reason each such fine was imposed on the owner of Unit 990;

iii.  The date each such fine was imposed on the owner of Unit 990; and

iv.   The amount of interest which was charged with regard to each such fine;

(g).  With regard to collection costs (other than attorney fees) which have been incurred by the Bayside Court Owners' Association and which are secured by the lien referenced in item 1 above, please state:

i.    The date each such collection cost was incurred;

ii.   If any such collection cost was incurred as a result of collection, please state the nature of each such service and the date each such service was rendered;

iii.  If any such collection cost was incurred as a result of purchases of anything other than services, please state the nature of each such purchase and when each such item was purchased; and

iv.   The amount of interest which was charged with regard to each such collection cost.

(h).  With regard to attorney fees which have been incurred by the Bayside Owners' Association and which are secured by the lien referenced in item 1 above, please state

i.    The date each such fee was incurred by the Bayside Owners' Association,

ii.   Describe the services rendered for which each such attorney's fee was incurred by the Bayside Owners' Association and the date each such service was rendered;

iii.  The amount of interest which was charged with regard to each such attorney's fee charge.

2.  Please provide the following information for each of each of the following items which are secured by the lien recorded on May 13, 2013, securing the then amount of $22,236.62:

6

(a). The amount of each monthly assessment which was allegedly in default as of May 13, 2013 and which is secured by the lien referenced in item 2 above:

(b) The month and year for which each such delinquent assessment referenced in item 2(a) above was assessed against Unit 990;

(c). With regard to each such delinquent assessment described in item 2(a) above, please state the amount of interest charged on each such delinquent assessment;

(d). With regard to each late charge imposed on account of each such delinquent assessment described in item 2(a) above, please state

i. The amount of each such late charge;

ii. The date each such late charge was imposed on the owner of Unit 990; and

iii. The amount of interest which was charged with regard to each such late charge;

(e) With regard to each penalty which has been imposed on the owner of Unit 990 and is secured by the lien referenced in item 2 above, please state

i. The amount of each such penalty;

ii. The reason each such penalty was imposed on the owner of Unit 990;

iii. The date each such penalty was imposed on the owner of Unit 990; and

iv. The amount of interest which was charged with regard to each such penalty referenced in item 2(e) above;

(f). With regard to each fine which has been imposed on the owner of Unit 990 and is secured by the lien referenced in item 2 above, please state:

i. The amount of each such fine;

ii. The reason each such fine was imposed on the owner of Unit 990;

iii. The date each such fine was imposed on the owner of Unit 990; and

iv. The amount of interest which was charged with regard to each such fine referenced in item 2(e) above;

(g). With regard to collection costs (other than attorney fees) which have been incurred by the Bayside Court Owners' Association and which are secured by the lien referenced in item 2 above, please state:

i. The date each such collection cost was incurred;

ii. If any such collection cost was incurred as a result of collection services, please state the nature of each such service and the date each such service was rendered;

iii. If any such collection cost was incurred as a result of purchases by Bayside Owners' Association of anything other than services, please state the nature of each such purchase and when each such item was purchased;

iv. The amount of interest which was charged with regard to each such collection cost.

(h). With regard to attorney fees which have been incurred by the Bayside Owners' Association and which are secured by the lien referenced in item 2 above, please state

i. The date each such fee was incurred by the Bayside Owners' Association,

7

ii. Describe the services rendered for which each such attorney's fee was incurred by the Bayside Owners' Association and the date each such service was rendered;

iii. The amount of interest which was charged with regard to each such attorney's fee charge.

3. Please provide the following information for each of each of the following items which are secured by the lien recorded on March 19, 2014, securing the then amount of $40,985.16:

(a). The amount of each monthly assessment allegedly in default as of March 19, 2014:

(b) The month and year for which each such delinquent assessment referenced in item 3 above was assessed against Unit 990;

(c) With regard to each such delinquent assessment described in item 3(a) above, please state the amount of interest charged on each such delinquent assessment;

(d) With regard to each late charge imposed on account of each such delinquent assessment described in item 3(a) above, please state

i. The amount of each such late charge;

ii. The date each such late charge was imposed on the owner of Unit 990; and

iii. The amount of interest which was charged with regard to each such late charge;

(e) With regard to each penalty which has been imposed on the owner of Unit 990 and is secured by the lien referenced in item 3 above, please state

i. The amount of each such penalty;

ii. The reason each such penalty was imposed on the owner of Unit 990;

iii. The date each such penalty was imposed on the owner of Unit 990; and

iv. The amount of interest which was charged with regard to each such penalty;

(f) With regard to each fine which has been imposed on the owner of Unit 990 and is secured by the lien referenced in item 3 above, please state:

i. The amount of each such fine;

ii. The reason each such fine was imposed on the owner of Unit 990;

ii. The date each such fine was imposed on the owner of Unit 990; and

iii. The amount of interest which was charged with regard to each such fine;

(g). With regard to collection costs (other than attorney fees) which have been incurred and which are secured by the lien referenced in item 3 above, please state:

i. The date each such collection cost was incurred;

ii. If any such collection cost was incurred as a result of collection services, please state the nature of each such service and when it was rendered;

iii. If any such collection cost was incurred as a result of purchases by Bayside Owners' Association of anything other than services, please state the nature of each such purchase and when each such item was purchased;

8

iv. The amount of interest which was charged with regard to each such collection charge.

(h)  With regard to attorney fees which have been incurred by the Bayside Owners' Association and which are secured by the lien referenced in item 3 above, please state

i.  The date each such fee was incurred by the Bayside Owners' Association,

ii.  Describe the services rendered for which each such attorney's fee was incurred by the Bayside Owners' Association;

iii. The amount of interest which was charged with regard to each such attorney's fee charge.

I am making the foregoing request for information pursuant to all relevant provisions of the Davis Stirling Act, including but not limited to California Civil Code sections 4525(a), 4525(a)(4), 4530, 4530(a)(1), 4530(a)(3) and 4530(b)(1)).  Upon your receipt of this request, and prior to your beginning any work to provide me with any of the information I have requested in this email, I ask that you send me and receive my approval of your estimate of the reasonable fees (as provided for in Civil Code sections 4530((b)(1) and 4530(b)(2)) which the Bayside Owners' Association proposes to charge to cover the actual costs of providing the information I have requested above.

Thank you.

Robert E. Capron, as attorney for Scott Sorensen and Robert Martin

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2014.0.4592 / Virus Database: 3950/7548 - Release Date: 05/23/14



## FW: Curtis' forced sell of Unit C to BCOA

**Marlene Fong** <marlene.fong@fonglaw.com>

**From:** Marc Fong
**Sent:** Friday, October 03, 2014 10:49 AM
**To:** Marlene Fong
**Subject:** FW: Curtis' forced sell of Unit C to BCOA

**From:** Curtis Brown III [mailto:cmb3home@gmail.com]
**Sent:** Thursday, August 21, 2014 8:47 PM
**To:** Maureen Caldwell-Meurer; Marc Fong; Robert E. Capron; Andrew Stark; S-j Parker; Scott Sorensen; Melissa Chaidez; hap68_1999@yahoo.com; melissa@mjmmetal.com; Daniel Coffman; Tarmanhomes@sbcglobal.net
**Subject:** Curtis' forced sell of Unit C to BCOA

21 August 2014

Hello Everyone - Friends and Neighbors,

Just wanted to give you a heads up. Today, I have been "forced" to sell my property to the BCOA as a practical choice. The practical choice is a way to navigate an escape from the constant apprehension and insanity of it all. I say "forced" choice to sell, because practically speaking I have no more resources to keep the fight going. I am financially bankrupt, after putting up a fight against crazy.

I am discouraged that even with a complete historical documentation trail, outlining all the injustice that has befallen neighbors and I, there is no government agency (local, state or federal) that can easily step into the situation and assist any of us.



(HUD, maybe)

After two years to the date of fighting lunacy, it is time to move on and put this mess behind me.

At my BK 13 hearing today, the attorney for the BCOA was present.

After the meeting of creditors hearing, the BCOA attorney offered $115,000 cash offer to purchase the property.

After consultation with my attorney, I notified the BCOA of the impending HUD investigation into racial and religious discrimination. But will have to forgo the HUD investigation in order to settle.

The final BCOA offer was for $116,000 as full settlement of both civil cases.

This was a practical decision, rather than a morally just decision. I hope my practical choice will eventually bring peace of mind and spirit. I will relinquish final justice over to my faith in God's justice—after all, by faith I know that the wicked shall prosper only for a little while.

Thank you all for your encouragement the past two years to wage a good fight. I truly loved my little corner home, and will miss the work to make a better community.

I wish you all well. Keep up the good fight.

Best regards,

Curtis

# BCOA ANNUAL DISCLOSURE REPORT FOR 2013-2014

**Document #: 13110501LJ     Effective Date: 11/07/2013     Prepared By: 2013/2014 BCOA Board of Directors**

Dear Bayside Court Owners Association (BCOA) Member,

As required by our governance documents and the laws of this state, all BCOA members have been provided with this "annual disclosure". The annual disclosure represents a "state of the union" report for our association for 2013 & 2014. The good news is that the BCOA, through careful self management and accounting as begun in September 2012, has completely turned itself around in the space of just one year. Last year's disclosure was pretty grim-whereas this year's is a picture of real improvement, hope, and solvency. Unlike for 2013, 2014's assessments are not going up-they will stay the same as set for 2013 to help continue to rebuild the reserve fund. The reserve fund is our "building repair/replacement savings account" for the future and is significantly better funded now then in 2012.

The most frequent question the board still gets asked these days is: "*How can our assessments be so high-and our historical financial condition be so poor?*" There are many reasons for this situation, but the primary ones are:

a) Much of the association common areas are rather aged (much almost 100 years old!), and so require far more in the way of maintenance and repair expenditure then newer complexes in the area. This means the fundamental maintenance & repair cost per square foot for Bayside is relatively high to start with.

b) Historically the BCOA has failed to adequately assess its units for item (a) above.

c) Historically the BCOA has failed to sufficiently collect much of its assessment revenue from members.

d) The BCOA has overspent on its general operations (day to day expenses)-while failing to place sufficient funds into its reserve account since day 1.

e) The reserves were used to fund operations improperly during the 2008-2011 era recession when unit assessment delinquencies were running very high [see item (c) above]-so now we are having to play "catch up" for that situation.

f) The BCOA is a fairly small association which makes many of the fixed costs of association living relatively higher per member unit interest.

The second most frequent question the board gets asked is: "*Why do we have all these lawsuits happening?*" The answer: the BCOA's been seriously victimized almost since day 1 by; developer's building defects (resolved by lawsuit of earlier boards), members violating governance document rules and not paying required assessments (Unit C & 990), management agents & other service vendors violating their contract terms (ARA, Dome, Massingham, Citiscape, Deibler SF HOA, HOA Accounting), etc. When these things happen, the board first tries to work the problems out amicably-which requires the active participation of all parties involved. When that isn't forthcoming, the board either has to allow the membership to lose $-or decide to fight for membership interests by filing suit. The state of our finances greatly favors the latter option-and so the board (with our legal house now put in good order), is seeking return of lost membership equity through legal channels. So far this strategy has returned almost $18,000. in 2013 alone. This requires lot's of hard work & investment, plus strong board conviction. These are all in place now.

There's a lot of information in this disclosure, most of it mandated in form and content by law, (not reader interest, or user friendliness). To help members find what is likely of most interest to them, this disclosure has been laid out with the news first, and the duller legal boiler plate materials afterwards-wherever possible. The most critical information appears all on the face of the first three pages. Information has been presented in "as summarized as the law permits" form. Thank you for your continued patience with, faith in, and support of all the important changes under way at Bayside. The work continues & your board will keep you duly informed as things develop in the days to come.

Sincerely, *The 2013/2014 BCOA Board of Directors*

Annual Disclosure Document Listing (this is what makes up the entire annual disclosure report submittal):

- *BCOA Annual Disclosure Document For 2013 (this document #13110501LJ)*
- *BCOA 2014 Assessment Disclosure Report (document #13110502LJ)*
- *California Civil Code Form 1365.2.5: Funding Disclosure For Fiscal Year 2013 (document #13110503LJ)*
- *BCOA Financial Report Summary: 2013 Year-To-Date (document #13110104LJ)*
- *Reserve Study 2012 v1.3* (*included electronically unless hard copy is specially ordered)*
- *Insurance Disclosure (for 2013-2014)*

EXHIBIT JJ

## 2014 PRO FORMA OPERATING BUDGET *(pursuant to CC&R 6.9.1)*:

**1.0 INCOME: $243,285.** (up ~26% over 2013-see note a)

1.1 2014 Assessment Revenue=$186,785
1.2 <2014 Assessment Revenue (past due collections)=$20,000
1.3 Late Fees & Interest=$1500
1.4 Recaptured Expenses from <2013=$10,000.
1.5 Misc.=$25,000

**2.0 EXPENSES: $152,575.** (up ~39% over 2013-see note b)

2.1 Association Management=$40,000
2.2 Consulting-Financial=$1,500
2.3 Legal & Prof Fees=$15,000
2.4 Taxes=$50
2.5 Bank Charges=$300
2.6 Bad Debt=$0
2.7 Insurance=$20,325
2.8 Utilities=$48,400
2.9 Maintenance=$15,000
2.10 Leasing Services=$2,000
2.11 Capital Improvements=$10.000.

**3.0 RESERVE FUNDING (income-expenses): $90,710.** (up ~10% over 2013-see note c)

Notes:

a) $50,620. income increase due to: enhanced past due collections and expense recapture resulting from extensive legal collections and expense recapture activity pioneered by 2012/2013 board policy continuing into 2014, & laundry room leasing project created by 2012/2013 board policy.

b) $42,575. expense increase due to: greatly increased property management expenditures required to profitably obtain new income sources and final correction of 10+ years worth of historical BCOA operating deficiencies, radical insurance increases resulting from 2011 fire, expanded legal budget to earn income projection noted for past due collections & expense recapture, unavoidable utility fee increases experienced in 07/2013, leasing fees required for enhanced returns @ income line item 1.5.

c) $8045. reserve funding increase due to expanded revenue from laundry space leasing and improved past due collections & expense recapture. Note that ~10% reserves funding increase was  executed <u>without any BCOA unit assessment increase.</u> This is projected evidence of the new BCOA self management 2013 business model working for the BCOA membership as designed. 2015 should be even better, as expenses are projected to be significantly reduced.

(end of budget, begin annual disclosure commentary)

Pursuant to CC&R 6.9.1(iv): Reserve funding needs have been incorrectly determined by ARA-LLC's Reserve Study dated November 15, 2012. As a result of errors found in the study, the 2012/2013 board passed a motion to redo the study in-house. This work will be completed in 2014 and is expected to reduce our reserves requirement as noted in the current flawed report by ~50%.

**4.0 RESERVE REQUIREMENT (over next 30 years, in 2013 dollars per flawed ARA-LLC study): $1,187,379**

The funding of BCOA reserves has never met even the most minimal level of this study's current "AFM" funding model. This fact coupled with the general gross historical fiscal mismanagement of the BCOA's finances leaves the BCOA reserves forecast to be insufficient to meet its flawed reserve study overstated needs for the next 30 years.

**5.0 RESERVE FUNDING PERCENTAGE\*: 27%**

\*Calculated as:
[($220,000, 12/31/2013 projected reserve balance + $90,710, 2014 contribution) / $1,152,796 2013 requirement]

The detailed ARA-LLC reserve study plan (which provides its calculated results using readily available 2011 data for projection into the next 30 years), is available in our online yahoo group internet forum. Members may access it as noted in item #8.1 below. This study provides members with the more detailed information required by CA Civil Code 1365, but its data set is both flawed, and older then what the board is working with today.

**6.0 SPECIAL AND/OR ADDITIONAL REGULAR ASSESSMENT LEVY ANTICIPATED IN 2013-2014:** *None*

**7.0 REGULAR ASSESSMENT SCHEDULE CHANGE FOR 2014:** *0%*

There will be no regular assessment increase for 2014. The 2014 assessment schedule is attached as Document #13110502LJ, and incorporated herein by reference. There are no plans for any special assessments in 2014.

**8.0 MISCELLANEOUS ADVISORIES & LEGAL BOILERPLATE NOTICES REQUIRED BY CA STATE LAW:**

    8.1 Contacting The BCOA Board & Information Access

On 11/07/2013 the 2013/2014 BCOA Board of Directors and BCOA Officers are:
Raj Patel (director & president), Pietro Straccia (director & vice president), Raeshma Razvi (director), Laurence Jennings (secretary/treasurer & registered agent for the corporation). This board's term expires on July 27, 2014. Election ballots for the 2014/2015 board term must be mailed by June 15, 2014 to ensure a new board can be seated before the old board is unable to operate.

Pursuant to the stipulations contained within its governance documents, the BCOA became self managed and self accounted in 2012. This situation changed when the BCOA president contracted with a new property management agent in July 2013 to provide professional management and accounting services to the association.

Members are advised that if they need any information (including documentation referenced herein), or wish to provide any verbal or written notices to their association for any purpose, the following is the official contact data for The Bayside Court Owners Association (BCOA), a California Mutual Benefit Corporation:

    Contact Person: Laurence Jennings
    Postal Mail Address: BCOA, P.O. Box 81, Willits CA 95490
    E-mail Address: baysidecourt@yahoo.com
    Phone #: (707) 459-2287

Official BCOA Information Postings are made to the bulletin board located in the common areas courtyard off the Filbert St. parking lot.

Association members are strongly advised to be registered members of the BCOA's online internet forum (the "Bayside Court Owners Association" yahoo group), located at:

<http://groups.yahoo.com/neo/groups/filbertstreetlofts/conversations/messages>

This allows simplified, low cost access to important association information. If you are not a registered member and would like to join, simply send an email request to: <baysidecourt@yahoo.com>. An invitational response will be sent you, and upon your acceptance you'll be automatically joined. This group can be enjoyed by all members (who agree to abide by its rules of moderation which are: no spamming & no lodging of personal attacks or vitriolic flame posting), for the purpose of social contact with their neighbors, BCOA file information retrieval, and receipt of notifications from the BCOA Board, Officers, and its contracted property management agent.

    8.2 Board & Member Meeting Minutes Availability

BCOA Members have the right pursuant to CA Civil Code 1363.05(e) to receive board & member meeting minutes, be they draft or approved, within 30 days of any such meeting. Minutes are posted online in the yahoo group for easy access, (see item #8.1 herein).

# Bayside Court OA
# 2011 Budget

| | 2011 Budget |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| **4000 · Revenues** | |
| 4010 · Association Assessments | 154,237.10 |
| 4030 · Laundry Income | 1,200.00 |
| 4070 · Keys / Remotes / Gate Openers | 200.00 |
| Total 4000 · Revenues | 155,637.10 |
| | |
| **4900 · Cash Transfers** | |
| 4910 · Transfer to Reserve | -42,088.00 |
| Total 4900 · Cash Transfers | -42,088.00 |
| | |
| **Total Income** | 113,549.10 |
| | |
| **Gross Income** | 113,549.10 |
| | |
| **Expense** | |
| **5000 · Administrative Expense** | |
| 5010 · Management Fee | 18,450.00 |
| 5020 · Printing, Postage, Reproduction | 1,700.00 |
| 5030 · Professional Services | |
| 5031 · Legal | 650.00 |
| 5032 · Accounting / CPA | 4,025.00 |
| 5034 · Misc. Tax Filings | 225.00 |
| 5035 · Consulting | 1,000.00 |
| Total 5030 · Professional Services | 5,900.00 |
| | |
| 5040 · Bank Fees / Charges | 200.00 |
| 5060 · Inspctn/License/Permit/Certicat | 645.00 |
| 5095 · Miscellaneous Admin | 500.00 |
| Total 5000 · Administrative Expense | 27,395.00 |
| | |
| **5400 · Utility Expense** | |
| 5420 · Gas | 335.83 |
| 5430 · Electricity | 6,206.66 |
| 5440 · Water / Sewer | 10,255.01 |
| 5450 · Refuse Removal | 27,462.75 |
| 5455 · Recycling | 253.00 |
| 5460 · Telephone | 1,500.00 |
| Total 5400 · Utility Expense | 46,013.25 |
| | |
| **5600 · Contract Services** | |
| 5610 · Janitorial / Cleaning Contract | 5,400.00 |
| 5620 · Landscape Contract | 5,000.00 |
| 5630 · Pest Control Contract | 2,100.00 |
| 5650 · Fire & Safety Contract | 646.00 |
| 5660 · Security Contract | 410.00 |
| Total 5600 · Contract Services | 13,556.00 |
| | |
| **5800 · Depletable Supplies** | |
| 5820 · Electrical / Lighting Supplies | 500.00 |
| Total 5800 · Depletable Supplies | 500.00 |



EXHIBIT KK

Case: 14-44083    Doc# 72-4    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 14 of 29

**BAYSIDE COURT HOMEOWNERS ASSOCIATION**

**STATEMENT OF REVENUES, EXPENSES
AND CHANGES IN FUND BALANCES
YEARS ENDED DECEMBER 31, 2010 AND 2009**

|  | Operations Fund | Replacement Fund | Total Funds | 2009 Total Funds |
|---|---|---|---|---|
| **REVENUES** | | | | |
| Assessments | $ 93,175 | $ 38,054 | $ 131,229 | $ 159,429 |
| Interest Income (Note 2) | 509 | 291 | 799 | 2,226 |
| Laundry and other income | 4,053 | - | 4,053 | 11,696 |
| Total assets | 97,736 | 38,345 | 136,081 | 173,351 |
| **EXPENSES** | | | | |
| Maintenance and operations | | | | |
| Janitorial | 5,400 | - | 5,400 | 5,220 |
| Landscape maintenance | 3,384 | - | 3,384 | 7,840 |
| Pest control | 2,275 | - | 2,275 | 16,608 |
| Other facilities maintenance | 801 | - | 801 | 19,168 |
| Repairs and replacements | 10,733 | 609 | 11,342 | 124,874 |
|  | 22,593 | 609 | 23,202 | 173,710 |
| Administration | | | | |
| Management | 18,000 | - | 18,000 | 20,792 |
| Insurance | 13,060 | - | 13,060 | 10,069 |
| Office, postage and printing | 2,691 | - | 2,691 | 9,197 |
| Legal, accounting and consulting | 4,066 | - | 4,066 | 5,105 |
| Income tax provision (Note 2) | - | 100 | 100 | 188 |
| Bad debt expense (Note 3) | 8,176 | - | 8,176 | 9,618 |
|  | 45,993 | - | 46,093 | 54,969 |
| Utilities | | | | |
| Gas and electric | 7,255 | - | 7,255 | 5,369 |
| Water and sewer | 11,441 | - | 11,441 | 11,900 |
| Refuse removal | 28,092 | - | 28,092 | 22,557 |
| Telephone | 1,504 | - | 1,504 | 1,319 |
|  | 48,291 | - | 48,291 | 41,145 |
| Total expenses | 116,877 | 609 | 117,586 | 269,824 |
| **EXCESS (DEFICIENCY) OF REVENUES OVER EXPENSES** | $ (19,141) | $ 37,736 | $ 18,495 | $ (96,473) |
| **FUND BALANCE (DEFICIT) BEGINNING OF YEAR** | 9,439 | 67,002 | 76,441 | 172,914 |
| **FUND BALANCE (DEFICIT) END OF YEAR** | $ (9,702) | $ 104,738 | $ 94,936 | $ 76,441 |

See Independent Accountants' Review Report and accompanying Notes

Date: Oct 21, 2014 8:57 PM

Cc:

We are writing you to request your direct assistance in protecting the financial well being of your association from the greatest threat that has ever faced it: Unit 990's non performance.

In a nutshell, Unit 990's owner and it's buyer are working together to fleece our association for personal gain. They can move very quickly and have a variety of tools at hand with which they can cause economic damage to the BCOA. It is critical that we move more quickly to try to stay a step or two ahead of them. We did the same thing with Unit C, and prevailed. However, Unit C was not lawyered up like Unit 990 is, so the job there was easier.

What the Board must now do to protect your interests is change the $25,000. assessment write down deal passed in January of this year, and up it to $100,000. The reason we need to do this is that Unit 990's bankruptcy may strip the >$90,000. in liens we now hold, thru foreclosure sale which appears likely at this time. What we do not get in liens when the property sells, we must attain thru the assessment write down option we have already asked for (and received) your support on late last year.

The problem is, it takes 30+ days to complete a ballot initiative cycle-and the Unit 990 sale will likely be a done deal by then. We need to move fast here or we will be caught flat footed.

If the Board can receive a Voting Proxy from you that allows BCOA President Raj Patel to vote your member interest at the Member meeting this coming Saturday (October 25), it can put in place the necessary CC&R revisions that will protect and strengthen our financial position.

What the Board will do with your vote is:

1) Change CC&R 6.2.3 to require a payment from Unit 990 of $100,000. vs the old $25,000.

2) Change Parking & Build-out Regulations so that Unit 990 has to receive Board approval before it can access its full potential market value.

3) Change Unit C (which we all now own) to full live/work status, and include unused Common Area into it, to increase its rental value to the market maximum.

Can we receive your support? It is absolutely vital here. Losing the next round with Unit 990 will cost all association members >$3,200. each.

Unit 990 will be bought by a commercial developer interest that intends to make serious money-at the direct expense of all other homeowners.

If we work together-we can thwart this effort and protect ourselves.

If you could sign the attached Voting Proxy and e-mail it back, or hand deliver it to the Member meeting in Unit C this Saturday at 1:00pm, we can win this battle for our financial future.

1

# BALLOT: BCOA CC&R REVISION PROJECT #4

*(see reverse side for general information and mailing instructions)*

In accordance with the requirements of California Law, you have been provided with this ballot so that you may vote upon the following BCOA CC&R revisions. 17 of the existing 33 BCOA units voting "yes" (a simple 50% majority), are required for each individual measure listed below to pass. Please refer to the "Ballot Initiative Explanation Summary" included in this mailing if you need more information regarding any particular measure.

*-To vote: circle only the "yes" or "no" adjacent to each item being voted on below.-*
*(Caution: circling both will void an item's vote!)*

---

[01] Delete all references to, and CC&Rs for, Unit C in all preexisting CC&R language ------ **YES**   **NO**

[02] Reclassify outdoor walkable Common Area located inside wrought iron fence, from PG&E room northern wall to BCOA northern wall (where access door is located), to Board controlled Unit C Exclusive Use Common Area, (emergency access allowed) --- **YES**   **NO**

[03] Reclassify indoor walkable Common Area located outside of existing Unit C southern & western interior walls, to Board controlled Unit C Exclusive Use Common Area ------- **YES**   **NO**

[04] Reclassify indoor walkable Common Area known as Storage Room Bathroom, to Board controlled Unit C Exclusive Use Common Area ----------------------- **YES**   **NO**

[05] Reclassify indoor Common Area now occupied by Storage Spaces #DD, CC, Y, Z, AA, BB & GG (plus their adjacent walkway areas) in Storage Room, to Board controlled Unit C Exclusive Use Common Area ----------------- **YES**   **NO**

[06] All BCOA Unit Build-Outs & Parking Area Modifications are subject to Board control, & may not be started, worked on, or utilized without duly motioned Board approval ---- **YES**   **NO**

[07] Insert this text as CC&R 6.2.3 (a) in next CC&R recording:
*The provisions of CC&R 6.2.3 (a) & (b) may only be modified with the express written advance notarized consent of the owner of Unit 990.* ----------------------- **YES**   **NO**

[08] CC&R 6.2.3 (b), as amended by initiative in 01/2014, shall be further amended by replacing its first sentence with the following text, before it is recorded in Alameda County:
*Unit 990 may permanently qualify for a reduced assessment level that is 1/3 of the regular & any special assessment level, if the owner pays a one time BCOA assessment reclassification premium of $100,000.00 & grants a BCOA Board approved easement to the main water shut off valve located within it to the BCOA.* ---- **YES**   **NO**

-end of ballot-



1 | JOHN S. RICHARDS, ESQ. (#249073)
RICHARDS LAW
2 | 4695 Chabot Drive, Suite 200
3 | Pleasanton, CA 94588
Telephone:    (925) 231-8104
4 | Facsimile:    (925) 231-8109

5 | Attorneys for Plaintiff
6 | BAYSIDE COURT OWNERS ASSOCIATION,
a nonprofit mutual benefit corporation

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF ALAMEDA

10 | UNLIMITED JURISDICTION

11 | BAYSIDE COURT OWNERS                )   Case No.   RG 13683940
ASSOCIATION, a nonprofit mutual benefit )
12 | corporation;                          )
                                       )   **COMPLAINT FOR BREACH OF**
13 |                                     )   **WRITTEN CONTRACT**
              Plaintiff,                )
14 |                                     )
                                       )
15 | v.                                  )
                                       )
16 | JOHN PAUL CRUZ, also known as JOHN  )
PAUL C. CRUZ, an individual and DOES 1 )
17 | through 20, inclusive.               )
                                       )
18 |              Defendants.            )

19

20 |        1.      Plaintiff is, and at all times mentioned in this complaint has been, a nonprofit mutual

21 | benefit corporation existing under the laws of California and the residential owners association for the

22 | common interest development known as BAYSIDE COURT OWNERS ASSOCIATION

23 | ("BAYSIDE" or "Plaintiff")

24 |        2.      Defendant John Paul Cruz also known as JOHN PAUL C. CRUZ ("CRUZ" or

25 | "Defendant), is an individual, and at all times mentioned is, a resident of Alameda County, California.

26 |        3.      Plaintiff is informed, believes, and alleges that at all times mentioned in this complaint,

27 | each of the defendants was the agent, servant, representative, and employee of each of the remaining

28

---

1

COMPLAINT

Case No. _____

Case: 14-44083    Doc# 72-4    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 18 of 29

1 defendants and was acting within the course and scope of such agency, service, representation, and
2 employment.

3      4.      BAYSIDE is a condominium project as defined in Civil Code §1351(f). All properties
4 within the development, including individually owned units and common areas, are subject to a
5 declaration of restrictions that was recorded in the office of the County Recorder of Alameda County
6 on July 10, 200, as document number 2000-203590. A true copy of the declaration and subsequently
7 recorded amendments is attached to this complaint as Exhibit A.

8      5.      Defendant and Does 1 through 20 are the record owner(s) of unit number 990, which is
9 commonly known as 990 28th Street, Oakland, California 94608 and/or 2828 Filbert Street, #990,
10 Oakland, California 94608. Defendant's unit is located within BAYSIDE and is subject to the
11 declaration of restrictions (Exhibit A).

12      6.      The covenants and restrictions contained in the declaration (Exhibit A) constitute
13 equitable servitudes under Civil Code §1354 that inure to the benefit of, and are binding on, all owners
14 of units within the development, including defendant owners.

15      7.      The declaration (Exhibit A) and plaintiff's bylaws (a copy of which is attached as
16 Exhibit B) create and establish plaintiff as the governing body for the management, administration, and
17 operation of the development. Under article 9.2.1 of the declaration and Civil Code §1354, plaintiff is
18 authorized to enforce the declaration.

19      8.      Article 6.6.3 of the declaration (Exhibit A, page 33) and article 3.1.1 of the bylaws
20 (Exhibit B, page 1) and Civil Code §1367(f) provide that BAYSIDE may institute this action to collect
21 past due assessment against Defendant personally.

22      9.      Under the terms of the articles and bylaws, BAYSIDE set the assessments due and
23 owed by Defendant.

24      10.     Since on or about January 1, 2011, Defendant has owed a balance due to BAYSIDE for
25 assessments.

26      11.     On or about February 6, 2013, BAYSIDE sent, by certified mail, a pre-lien notice, in
27 the amount of $17,881.82. A true and correct copy of said letter is attached hereto as exhibit "C."

28      12.     Defendant did not respond to or dispute the debt noticed in said letter.

2
COMPLAINT

Case No. _____

13. On or about March 18, 2013, BAYSIDE sent, by certified mail, a second pre-lien notice, in the amount of $22,236.62. A true and correct copy of said letter is attached hereto as exhibit "D."

14. Defendant did not respond to or dispute the debt noticed in said letter.

15. BAYSIDE has now, pursuant to the declarations and bylaws, recorded two "Notice of Delinquent Assessment" with the Alameda County Recorder's office, the first on March 11, 2013 as document number 2013092522 and the second on May 13, 2013 as document number 2013172618. A true and correct copy of these documents is attached hereto as exhibit "E."

## FIRST CAUSE OF ACTION

(Breach of Contract As To Defendant CRUZ and Does 1-20)

16. BAYSIDE incorporates by reference, as if set forth in full at this point, each and every allegation contained in paragraphs 1 through 15, inclusive, of this Complaint.

17. BAYSIDE and CRUZ entered into a valid and binding written contract, which are the declarations and the bylaws attached hereto.

18. BAYSIDE has performed all of the material terms of the contract.

19. CRUZ has failed to pay his assessments due and therefore has materially breached the contract.

20. Because of CRUZ' breach, BAYSIDE has been damaged in the amounts included herein and to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as set forth in the Prayer below;

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

3

COMPLAINT

Case No. _____

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment as follows:

1.  For a judgment in favor of BAYSIDE against CRUZ including but not limited to:

    a.  Delinquent assessments totaling $37,557.52 and;

    b.  Late Charges totaling $5,187.06;

    c.  Costs of collection and suit;

    d.  Attorney's fees.

2.  For such other and further relief as this court may deem just and proper.


Dated: June 17, 2013

RICHARDS LAW

By: _____

JOHN S. RICHARDS
BAYSIDE COURT OWNERS
ASSOCIATION, a nonprofit mutual benefit
corporation

4
COMPLAINT

Case No. _____

## Marc Fong

| | |
|---|---|
| **From:** | Marc Fong |
| **Sent:** | Tuesday, December 03, 2013 11:14 AM |
| **To:** | 'John (J.R.) Richards' |
| **Subject:** | Settlement offer |

**Importance:** High

JR,

In reviewing the various materials provided by your client, I note that the settlement with JP Cruz as against the HOA's claims was for the sum of $16,106.75. Your client's claim against mine is for $83,844.21, plus attorney's fees and costs. This disproportionate stacking against my client is unfair and in violation of the good faith requirements of CCP 877. In *River Garden Farms v. Superior Court* (1972)26 C.A. 3d 986, 103 C.R. 498 the court, in haec verba said "... In a multi party case the threat of an unshared judgment against the last remaining defendant-diminished only by the meager settlements with his eager fellows-permits a plaintiff to create acute financial pressures bordering on extortion...It also aids the goal of settlement, by preventing a plaintiff from selecting one defendant as the target for enlarged demands after unreasonably low settlements with others." Your client's settlement with Cruz runs afoul of the principles articulated in River Garden and it's progeny. Both Cruz and S-J were co-obligors to the HOA's assessments and should be treated equally.

Also, you should know that I have had the chance to review the BCOA's Board minutes. If we are unable to settle this matter, I am confident that I have ample ammunition for a cross complaint against your client and the individual board members, for a number of governing document abuses.

That being said my client is willing to offer payment in the amount of $16,106.75, payable December 9, 2013, and an agreement to get current on the assessments going forward, in full and final satisfaction of the issues framed in your amended complaint , endorsed filed August 27, 2013.

Marc Alan Fong Esq.
Fong & Fong
A Professional Law Corporation
2161 Harbor Bay Parkway
Alameda, CA.94502

p. 510-748-6800 x107
f. 510-748-6822

Business-Real Property-Litigation-Employment-Alternative Dispute Resolution

www.fongmediation.net

Notice: This electronic mail transmission may constitute an attorney-client communication that is privileged by law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail. To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

# BCOA 2015 PROFORMA OPERATING BUDGET

**Document #: 14102302DE r1**  **Effective Date: 11/22/2014**  **Prepared By: BCOA Accounting**

**1.0 INCOME: $302,534.** (up 24% over 2014, see note a)

1.1 2015 Assessment Revenue=$187,721
1.2 < 2015 Assessment Revenue Collections (past due collections)=$60,000
1.3 Late Fees & Interest=$1500
1.4 Recaptured Operating Expenditures from < 2015=$17,613
1.5 Leasing=$35,700

**2.0 EXPENSES: $209,450.** (up 37% over 2014, see note b)

2.1 Association & Project Management=$60,000
2.2 Consulting-Financial=$5,000
2.3 Legal & Prof Fees=$20,000
2.4 Taxes=$50
2.5 Bank Charges=$300
2.6 Bad Debt=$0
2.7 Insurance=$20,300
2.8 Utilities=$31,200
2.9 Maintenance & Repairs=$20,000
2.10 Leasing Services=$2,600
2.11 Capital Improvements=$50,000

**3.0 RESERVE FUNDING (Income - Expenses): $93,084.** (up 2.6% over 2014, see note c)

Notes:

a) $59,249. income increase due to: increased assessment on a larger Unit C, enhanced past due collections and expense recapture resulting from extensive legal collections and expense recapture activity pioneered by 2012/2013 board policy continuing into 2015, Unit A leasing project created by 2013-2014 board policy, and Storage Room leasing project available for implementation by 2014/2015 Board.

b) $56,875. expense increase due to: increased property & project management expenditures required to profitably obtain new income sources while continuing the correction of 14+ years worth of historical BCOA operating deficiencies, expanded CPA allocation for financial reviews/audits, expanded legal budget to earn income projection noted for past due collections & expense recapture, expanded maintenance/repair & capital improvement allocations to address needed repairs for: Unit 26 south wall & south side building stucco, the costs associated with Unit A remodeling work for leasing preparation, the surprise Portico & Storage Room reconstruction projects resulting from original Bayside Developer construction defects, and creation of new unified Filbert Lot Trash Enclosure. *Note: utility expenses are down ~36% due to new refuse handling program despite soaring double digit utility cost increases projected for July 2015.*

c) $2374. reserve funding increase due to improved income generation capacity from Unit C assessment increase, recapture of < 2015 operating expenditures, and < 2015 assessment past due collections.

-end of document-

EXHIBIT PP

# Bayside Court

HOMEOWNERS ASSOCIATION

# RULES AND
# REGULATIONS OF THE
# ASSOCIATION

**ISSUE #1**                    **July 2002**

1

## FORWARD

The Bayside Court Homeowners Association Board of Directors has developed and approved this document. It provides information on the Operating Rules and Regulations of the Bayside Court Homeowners Association. It prescribes rules and policies in concert with other applicable governing documents, which include the Association's Covenants, Conditions, and Restrictions (CC&Rs), Articles of Incorporation, and Bylaws.

The intent of this document is to provide a single source regarding the Association's approved rules and policies and their administration by the Bayside Court Homeowners Association Board of Directors.

In addition to the Operating Rules, all homeowners should familiarize themselves with the Association's CC&Rs and Bylaws. <u>If you are an off-site owner of a Bayside Court Condominium/Loft unit, please be sure to pass this booklet on to your tenants. It is your responsibility to make sure that your tenants understand the information contained in this booklet as well as the Association's other governing documents.</u>

Board of Directors
July 2002

Case: 14-44083   Doc# 72-4   Filed: 11/03/15   Entered: 11/03/15 19:19:30   Page 25 of 29

**Section 1.**                              **Enforcement of Rules**

The Bayside Court Homeowners Association encompasses 33 units. Because of the Association's size, it is necessary to establish rules and regulations that will benefit the community as a whole in accordance with the Covenants, Conditions and Restrictions (CC&Rs) of the Homeowner's Association. The primary purpose of established Rules and Regulations is to promote the health, safety and welfare of all residents, to promote the care and maintenance of Homeowner and Association property, and to enhance property values thereof. The Board of Directors has adopted the following policy regarding the rules governing each and every homeowner.

When deemed appropriate by the Board of Directors, violation notices will be issued to homeowners for failure to comply with the stated Operating Rules of the Association. Those homeowners finding themselves in receipt of a violation notice have fifteen (15) days from the date of the violation in which to file a notice of appeal. All appeals shall be filed with the Property Manager and should be submitted in writing to the Management Office:

> CitiScape Property Management, LLC
> 1231 Market Street, Suite #809
> San Francisco, CA 94103
> (415) 487-9962 - main
> (415) 487-9961 - fax

The Board of Directors shall review appeals for a decision and the homeowner will be advised. The decision of the Board of Directors is final and terminates the appeals process. The Property Manager shall submit all action taken by the Board of Directors for review at regularly scheduled Board meetings.

Case: 14-44083    Doc# 72-4    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 26 of 29

It is in the best interest of the Association to notify residents of violations in order to correct matters regarding health and safety in a timely manner. It shall be the responsibility of each homeowner having tenants in their unit to furnish tenant information to the Property Manager. However, all violations shall be the responsibility of the homeowner. A courtesy, warning will be given for first violations. Fines for second violations shall be $25.00, increasing in cost for subsequent violations. The violations will be charged against the homeowner's account. Failure of the homeowner to appeal within fifteen (15) days from the issuance of a violation notice, as described above, will result in the automatic addition of the fine to the homeowner's account.

In the event of any discrepancies between the Operating Rules and the CC&Rs, the CC&Rs and/or California Civil Code shall prevail.

Case: 14-44083    Doc# 72-4    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 27 of 29

Maureen@Maureensrealty.net
www.MaureensRealty.net
510-915-0092

-----Original Message-----
From: Jennifer Senhaji [mailto:JSenhaji@ortc.com]
Sent: Tuesday, October 28, 2014 1:57 PM
To: 'Maureen Caldwell-Meurer'
Subject: RE: 990 28th St #990 Title - 1) request to open escrow with ORTC -
2) Parking area for Unit 990

Old Escrow number is 1117002721. Please contact our claims department to
discuss parking issue.

Jennifer Senhaji, Escrow Officer
Commercial and Special Projects
Old Republic Title
555 12th Street Ste 2000
Oakland, Ca 94607
510-286-7710 direct
510-272-1121 office
510-208-5045 fax

-----Original Message-----
From: Maureen Caldwell-Meurer [mailto:maureen@maureensrealty.net]
Sent: Tuesday, October 28, 2014 11:48 AM
To: 'S-j'; Jennifer Senhaji
Subject: 990 28th St #990 Title - 1) request to open escrow with ORTC - 2)
Parking area for Unit 990

Hi Jennifer,
Re: 990 28th St, Unit - 1) request for ORTC title insurance 2) Parking
issues

ORTC insured my client, Sarah Jane Parker's unit, 958-28th St, aka 990 28th
St, Unit 990 when she purchased the property with John Paul Cruz and her
ex-husband in approximately 2005 or 2006.

My short sale specialists, MRA, opened title for the current sale with
Fidelity, Jennifer Glick.  Jen relayed today Fidelity will no longer insure
title due to the latest event, being unit 990's parking lot's designated
exclusive area challenged by the BCOA manager.

The BCOA manager Laurence Jennings, it appears, is stating that ORTC insured
the parking area designated for unit 990 in error.

        The BCOA manager's comment is: It looks to me like Old
Republic Title has a problem on their hands.

Case: 14-44083    Doc# 72-4    Filed: 11/03/15    Entered: 11/03/15 19:19:30    Page 28
of 29

EXHIBIT R

There is a survey that established a distinct exclusive parking area.
Survey - PDF Page 66 of the CC&Rs, (parking designation PDF page 56, I
believe)

-We would like ORTC to insure title, and to verify the original parking,
which was surveyed as unit 990's designated exclusive parking area.

    (This is a short sale which has been going on for some 10-odd
months.)

Jen Glick's email from Fidelity is JenGlick@fnf.com. 925-730-2080

Documents attached are
CC&Rs
HOA Cert data
Master Board Governance Policy Listings
958 28th St Assessment Disclosure report Preliminary Title Report RM RPA HUD

Best Regards,

Maureen

510-915-0092
www.MaureensRealty.net

4