

Entered on Docket
January 30, 2018
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed January 30, 2018

*Charles Novack*
Charles Novack
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

SARAH-JANE PARKER,

    Debtor.

Case No. 14-44083 CN

Chapter 13

**MEMORANDUM DECISION RE: JORDAN SUMMARY JUDGMENT MOTION**

    On January 11, 2018, this court conducted a continued hearing on respondent Scott Jordan's motion for summary judgment in this contested matter.[1] Jordan contends that Sarah-Jane Parker cannot, as a matter of law, prove that his legal representation of respondent Bayside Court Owners Association ("BCOA") violated the automatic stay and warrants the imposition of damages against him under Bankruptcy Code § 362(k). For the reasons stated below, this court grants Jordan's motion and dismisses Parker's claims against him.

    On August 24, 2017, this court issued a substantial memorandum decision regarding BCOA's own motion for summary judgment[2]. The undisputed facts discussed therein apply equally to Jordan's motion, and those undisputed facts (and the court's analysis of those facts) are fully

---

[1] Jordan originally filed the motion as a motion to dismiss under Federal Rule of Bankruptcy Procedure 7012(b)(6). For reasons stated on the record during the initial hearing and pursuant to Federal Rule of Bankruptcy Procedure 7012(d), this court converted his motion to one seeking summary judgment.

[2] Respondents Laurence Jennings, Raj Patel, Justin Hu, Lawrence Drouin, and Andrew Cantor joined in BCOA's summary judgment. These respondents shall collectively be referred to as "BCOA."

incorporated into this memorandum decision. To summarize, Parker filed the underlying Chapter 13 case to stay and ultimately discharge BCOA's Alameda County Superior Court claims against her. Parker owned Unit 990 at the Bayside Court development in Emeryville, California, and BCOA was (and remains) the entity which manages that multi-unit development. Parker and BCOA substantially disagreed over the amount of Parker's pre-petition HOA assessments and the methods by which BCOA was calculating her assessments. Parker filed her Chapter 13 bankruptcy on October 8, 2014 to stay the litigation and discharge her personal liability on BCOA disputed, secured claim. Her confirmed Chapter 13 plan addressed BCOA's claim by surrendering her interest in Unit 990 to all of the secured creditors against that property.[3]

The confirmation of Parker's Chapter 13 plan[4] terminated the automatic stay as to the secured claims (disputed and undisputed) against Unit 990. Despite this, Jordan - who is an attorney licensed to practice before this court - filed a post-confirmation motion for relief from the automatic stay on BCOA's behalf so that it could enforce its lien against Unit 990. Parker did not object to the relief from stay motion, and this court granted BCOA's motion by order dated April 20, 2015.

Parker commenced this contested matter by filing her §362(k) motion against BCOA and Jordan in November 2015 (collectively, the "Respondents"). One of the respondents, Andrew Cantor, is BCOA's general outside counsel. Parker alleges that the Respondents violated the automatic stay by embarking upon a deliberate post-petition campaign to recover Parker's pre-petition HOA debt. Parker claims that Respondents violated the automatic stay by, *inter alia*, developing a legal strategy whereby BCOA amended its CC&Rs in June 2015 to a) authorize BCOA to seize control and rent Unit 990 while Parker still owned the property and retain the rent for its

---

[3] Parker eventually moved to Frisco, Texas.

[4] Parker's Chapter 13 plan was confirmed by order dated December 17, 2014.

2

MEMORANDUM DECISION

own benefit, b) strip Unit 990 of some of its assigned parking spots, and c) increase Unit 990's liability for common area expenses.[5]

BCOA was the entity which undertook these allegedly offensive collection efforts, since it actually assessed the HOA dues, changed Unit 990's share of the common area maintenance expenses, and leased Unit 990. As for Jordan, Parker alleges that his legal representation of BCOA also renders him liable under § 362(k). Parker alleges that his filing of the relief from stay motion (which she asserts was premised on a bogus proof of claim), and his alleged participation in the development of BCOA's collection strategy brings him within the ambit of § 362(k). Parker points to a letter from Andrew Cantor to BCOA's board of directors (Ex. AA, doc. 72-3, page 1) that implies that Jordan assisted him in developing the disputed collection strategy. Cantor's June 5, 2015 letter states that "Together with the assistance of Bankruptcy Counsel Scott Jordan whom I recommended join our team, we have developed a potent plan to help the BCOA recover from the long-term economic damage inflicted by 990's delinquent owner. . . . In regards to 990, this has resulted in the BCOA plan to lease the property to allow the BCOA to recoup reserves funding necessary for your Board to take care of its fiduciary duty of properly running your association. Revising your CC&Rs to authorize the leasing of delinquent & abandoned units in order to protect the membership from severe economic hardship is nothing short of brilliant." Parker also refers this court to BCOA's "June Ballot Initiative Summary," which recites that "Two 2015 association attorney's (sic) have advised that this revision [to the CC&Rs] is necessary in order to lawfully lease abandoned Bayside units - which is necessary if we are to prevent the unpaid obligations of delinquent Members who choose not to fulfill their obligations from being assessed to the remaining Members in 2016 and beyond."(Ex. M.) Furthermore, former BCOA board member (and respondent) Laurence Jennings testified during his March 22, 2017 deposition that Jordan and Cantor were the two unnamed attorneys referenced in the June Ballot Summary. Jennings stated that "[I]t was attorney Jordan who approved the idea and who added that the CC&Rs would have to be amended to "allow" seizure of

---

[5] The full panoply of the alleged § 362(k) violations is described in the BCOA summary judgment decision.

the unit and its rental income." Jordan (under the guise of the attorney-client privilege) neither admits nor denies that he so advised BCOA.

Thus, the undisputed facts are that BCOA retained Jordan to file its motion for relief from stay, to provide legal advice regarding Parker's bankruptcy, and to help develop a strategy by which BCOA could remedy the economic consequences of Parker's discharge of her pre-petition HOA debt and the surrender of Unit 990 (the latter of which resulted in Parker's abandonment of Unit 990 and her failure to pay post-petition HOA assessments and fines).[6]

Jordan argues that his representation of BCOA did not, as a matter of law, violate the automatic stay. Parker disagrees. She argues that the timing of his alleged advice and BCOA's subsequent conduct (*i.e.*, the amending of its CC&Rs and the seizure and renting of Unit 990) creates a material question of fact regarding Jordan's role in BCOA's alleged plot to collect its pre-petition HOA claim.

**The Automatic Stay**

Bankruptcy Code §362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."[7] The automatic stay's scope is broad. As noted by the Ninth Circuit, "[T]he automatic stay plays a vial role in bankruptcy. It is designed to protect debtors from all collection efforts while they attempt to regain their financial footing. As Congress stated "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.""" (emphasis in original). *Schwartz v. United States (In re Schwartz)*, 954

---

[6] The senior lienholder against Unit 990 conducted a trustee's sale on December 6, 2016. This sale terminated Parker's interest in Unit 990 and her obligation to pay post-petition HOA assessments.

[7] This is the only subsection of § 362(a) which seems to apply to Parker's allegations.

4

MEMORANDUM DECISION
Case: 14-44083    Doc# 223    Filed: 01/30/18    Entered: 01/30/18 14:41:36    Page 4 of 9

F.2d 569, 571 (9th Cir. 1992). Section 362 "operates as a stay, applicable to all entities" and therefore applies with equal force to individuals who are not, *per se*, creditors. (See also *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855 (9th Cir. 2008), citing *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 362, 369-70, (2006), observing that "Bankruptcy jurisdiction, at its core, is in rem," such that it "is premised on the debtor and his estate, and not on the creditors.") As such, agents or attorneys employed by a creditor may be held liable under § 362(k) if they are the individuals or entities which tried to collect, assess or recover a claim against a debtor. Bankruptcy Code § 362(k) provides the remedy for such conduct, as it authorizes damages for willful violations of the automatic stay. Section 362(k) provides in pertinent part that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Willful conduct requires that 1) the creditor knew of the automatic stay and 2) the actions that violate the stay be intentional. No specific intent is required; a good faith belief that the conduct in question does not violate the stay is not relevant to whether the act was willful or whether damages must be awarded. *In re Peralta*, 317 B.R. 381, 389 (B.A.P. 9th Cir. 2004). The scope of the automatic stay is not limitless, however, and to state the obvious, this court must first find that Jordan violated the automatic stay before it can award damages and fees under § 362(k).

**The Summary Judgment Standard**

The standard for summary judgment is well established. Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In evaluating the evidence to determine whether there is a genuine issue of fact," the court "draws all

reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Contra Costa Transit. Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v.Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D.Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir.1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rationale trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted.).

It is undisputed that Jordan knew of Parker's bankruptcy filing and the automatic stay that applied to creditor actions; he was, after all, the attorney who filed BCOA's motion for relief from the automatic stay. Furthermore, the evidence indicates that Jordan provided on-going legal advice regarding Parker's bankruptcy and participated (to some degree) in developing a strategy by which BCOA could economically recover from Parker's discharge and failure to pay post-petition HOA assessments. Yet Parker has not alerted this court to any evidence which indicates (or creates a factual dispute) that Jordan took any affirmative step to actually collect, assess or recover any debt against Parker or Unit 990. Jordan is not a BCOA board member and he was not retained to collect Parker's debt by judicial or other means. The evidence before this court only indicates that BCOA retained Jordan to file its relief from stay motion (an act authorized by the Bankruptcy Code and thus not a stay violation) and advise it regarding a financial recovery strategy which primarily focused on Unit 990. While the act of providing legal advice may lead to impermissible collection efforts, it does not, in and of itself, violate the automatic stay.

**When does an attorney violate the automatic stay?**

Bankruptcy courts have routinely awarded § 362(k) damages against attorneys who commenced or continued pre-petition litigation against a debtor or who failed to inform a Superior Court of the imposition of the automatic stay. For example, in *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010), *overruled in part*, 803 F.3d 1095 (9th Cir. 2015), the creditor's attorney filed a pre-petition motion for contempt against the debtor in state court litigation for failure to pay spousal

6

support. The debtor filed for bankruptcy before the state court held a hearing on the contempt motion. Despite the bankruptcy filing, the creditor's attorney appeared at the contempt hearing and the state court subsequently issued a contempt order. The debtor appealed the state court order and the creditor's attorney filed a responsive brief which argued that the lower court correctly issued the contempt order. The Ninth Circuit held that the creditor's counsel violated the automatic stay. It stated that creditor's counsel had a duty "to alert the appellate court to the obvious conflicts between the order and the stay" and thereby violated §362(a)(1) when he failed to discontinue the action. 595 F.3d, *supra*, at 944. *See also Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002). While the lawyers in these types of cases were not the actual creditors, it was the attorneys' own actions - on behalf of their creditors clients - which violated the stay.

All of the cases cited by Jordan fall within this line of conduct; in each, the attorney who was held to have violated the automatic stay (or the discharge injunction) continued pre-petition litigation and thus was the individual or entity taking the real steps to collect the pre-petition debt. Critically, Parker did not cite to a single case where an attorney was held liable under Bankruptcy Code § 362(k) for simply providing legal advice.

Few cases directly address such attorney conduct. Those that do suggest that merely counseling a client does not violate the automatic stay. In *In re Daniels*, 316 B.R. 342, (Bankr. D. Idaho 2004), the bankruptcy court held that both the creditor and his counsel violated the automatic stay due to the attorney's post-petition collection advice and conduct. In this case, the creditor obtained a pre-petition default judgment against the debtor. When the debtor did not satisfy the judgment, the creditor, acting *pro se*, applied for a warrant for the debtor's arrest. The creditor thereafter learned that the debtor had filed for bankruptcy, and he sought the advice of counsel. The debtor's attorney then contacted creditor's attorney and demanded that he withdraw the arrest warrant. The creditor's attorney ignored the request.

The bankruptcy court determined that the creditor's refusal to withdraw the arrest warrant violated the automatic stay. The court reasoned that, "It […] appears that Creditor authorized Counsel to finally determine whether it should accede to Debtor's requests. In this case, [Creditor] not only instructed Debtor and his attorney's staff to consult with Counsel about the case, but also

7

MEMORANDUM DECISION
Case: 14-44083    Doc# 223    Filed: 01/30/18    Entered: 01/30/18 14:41:36    Page 7 of 9

made it abundantly clear that the attorney, not her, should ultimately "make the call" concerning whether Creditor should accommodate Debtor's needs. [… ] Counsel was engaged in more than merely rendering advice to Creditor. Counsel appreciated his role as the "decision-maker" when he refused to cooperate by promoting the notion that he and his client had no duty to act. Under these facts, Counsel's conduct is actionable." *Daniels*, 316 B.R. at 351.

In contrast with *Daniels*, Parker has not presented any evidence which creates a question of fact that Jordan undertook specific actions as agent or litigation counsel that violated the automatic stay. Rather, he provided advice, which BCOA purportedly accepted and implemented to allegedly collect, assess or recover a pre-petition claim against Parker. There is no evidence indicating that Jordan affirmatively took any steps to collect, assess or recover Parker's unpaid HOA assessments. Accordingly, Jordan's summary judgment motion is granted.[8] Jordan shall prepare and submit an appropriate order.

**\* \* \* END OF ORDER \* \* \***

---

[8] To the extent that Parker also seeks to hold Jordan liable under Bankruptcy Code § 105, summary judgment is also granted as to that claim. Absent a stay violation, Parker is not entitled to any relief under § 105. Moreover, for reasons stated on the record, this court is not awarding any sanctions against Jordan relating to BCOA's proof of claim.

Case No. 14-44083 CN

**COURT SERVICE LIST**

All recipients are ECF participants.